JOHN E. MANGUM v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 10 December, 1924.)

**1. Carriers — Railroads — Federal Statutes and Decisions—Negligence— Employer and Employee—Trials.**

The Federal statutes and decisions control in an action brought in the State court to recover damages for a personal injury alleged to have been negligently caused to a railroad employee while engaged in interstate commerce, in the course of his duties to the defendant railroad company, his employer therein.

**2. Statutes—Carriers—Railroads—Commerce—Employer and Employee— Federal Employers' Liability Act—Federal Boiler Inspection Act— Interstate Commerce Commission**

Where a violation of the duty imposed by the Federal Employers' Liability Act and the Boiler Inspection Act and the rules of the Interstate Commerce Commission in relation thereto causes a personal injury to an employee engaged in the course of his employment by a railroad company in interstate commerce, it is unnecessary for the plaintiff to plead or prove the provisions of these acts and rules in his action in the State courts to recover damages for the injury, etc., for the courts will take judicial notice thereof.

**3. Same—Negligence—Evidence.**

The Federal Employers' Liability and Boiler Inspection acts and the rules of the Interstate Commerce Commission in pursuance thereof require, among other things, that the locomotives be equipped with a proper pilot, or cow-catcher; and where a locomotive was not so equipped, but with a rotten pilot, came into collision with an automobile at a crossing, and the evidence in plaintiff's action to recover damages tends to show that by reason of the defect the automobile went under the locomotive, and caused a derailment, proximately producing the injury complained of to a fireman thereon while engaged in interstate duties, the failure of defendant to comply with the requirements of the Federal law is in itself evidence of actionable negligence, for which a recovery may be had.

**4. Same—Collisions—Witnesses—Experts' Opinion—Questions for Jury.**

In an action to recover damages for a personal injury under the Federal Employers' Liability Act and the Boiler Inspection Act, and the rules of the Interstate Commerce Commission in pursuance thereof, expert opinion evidence in proper instances is competent to show that a rotten pilot to the locomotive in a collision with an automobile would result in the automobile's breaking through to beneath the locomotive, resulting in a derailment, when relevant to the inquiry, in an action by an employee on the locomotive of a railroad company engaged in interstate commerce, who was injured in the derailment, and an exception by the carrier, under the facts of this case, that it invaded the province of the jury upon the issue of negligence was *held* untenable.

**5. Same—Proximate Cause.**

Where a railroad locomotive was derailed in a collision with an automobile at a public crossing, and there is evidence of negligence on the

Mangum *v.* R. R.

carrier's part in proximately causing an injury to its employee, in his action for damages the mere fact that the driver of the automobile may have likewise been negligent does not bar the plaintiff's right to recover in his action against his employer, alone, under the principle that another negligent act may concur in proximately causing an injury, without excluding liability of the defendant, when its negligent act was one of the proximate causes of the injury in suit, and the doctrine of intervening negligence is inapplicable.

**6. Same—Measure of Damages.**

In an action to recover damages for a personal injury to an employee of defendant railroad company under the provisions of the Federal Employers' Liability and Boiler Inspection acts, the measure of damages are those caused by the negligence of the defendant for physical suffering and the plaintiff's pecuniary loss by reason of permanent disability, when permanently disabled, present, and prospective, upon evidence in the case, reduced to the present worth of such aggregate sum as the jury may find the plaintiff to have been endamaged under the proper rule of expectancy of life, and the evidence as to plaintiff's earning capacity, etc.

**7. Instructions—Appeal and Error.**

The charge of the court when as a whole it correctly lays down to the jury upon the evidence in the case the correct rule for the admeasurement of damages will not be held for reversible error when in its disconnected part, taken disjointedly, error may be found; and where the charge thus construed is correct, reversible error will not be held because of faulty illustrations given upon correct principles.

APPEAL by defendant from *Grady, J.,* and a jury, at March Term, 1924, of WAKE.

Action brought by plaintiff against defendant under the Federal Employers' Liability Act to recover damages for personal injuries received on 13 December, 1921, at Red Springs, N. C. The plaintiff was a locomotive engineer, but was performing service of fireman at the time, on defendant's train which collided with a Chevrolet automobile at a public crossing. The engine and train were derailed, the driver of the automobile, one Gilchrist, was killed, the automobile demolished, and the plaintiff employee, at his post of duty, on the engine of defendant, permanently and seriously injured. The main allegations of negligence was that the defendant's pilot, or what is commonly known as the "cow-catcher," was old, worn, defective, insecure, an insufficient pilot and equipment, and an old, worn defective, and insecure .tender. The train was running at an unlawful speed. The engineer was not keeping a proper lookout or giving any warning to people driving along the public highway, when approaching the crossing, to avoid collision.

The complaint further alleges: "That, as a direct and proximate result of the defendant's said negligent, careless and wrongful conduct, the defendant's said locomotive engine violently collided ·with said auto-

mobile at said public crossing, completely demolishing said automobile and the pilot of said locomotive engine and the tender attached thereto; said locomotive engine, tender, and several cars in said train were derailed, and the plaintiff was caught between the demolished tender and the cab of said locomotive engine, and his left leg was horribly lacerated, mangled and injured; he was suspended by the flesh of his leg for a long space of time before being removed from said wreck; he was badly bruised and injured all over his body; he was forced to undergo a number of surgical operations," etc.

Plaintiff testified, in part: "I, as fireman, had nothing to do with the inspection of the engine. The pilot, or cow-catcher, was provided to the engine to remove obstructions from the track. This drawing correctly illustrates the position of the pilot that was on the locomotive engine. That is the shape pilot that it was; that is a correct diagram of it. The location of the pilot is at the end here. There was not anything else provided on this engine for the removal of obstructions. Upon removal of the pilot, the front of the engine is left open; the front of the engine is left entirely open. There would have been about three feet of space left there in front of the engine after the removal of the pilot, and as wide as the front, the width of the track. The standard width of the track is 4 feet 8½ inches. It would leave an opening there of 4 feet 8½ inches by 3 feet. There would not be anything left there to prevent the wheels coming in contact with any obstruction on the track. On this morning of 13 December, 1921, we were going in Red Springs, as usual, and hit some object. We went in on the same day as usual, and we generally went in on time. I did not notice about the speed then. Yes, it was running 45 or 50 miles per hour. There were yard-limit boards in Red Springs at that time, 200 yards south of the crossing. You get to the yard-limit board before you get to the crossing. This collision occurred within the yard limits of Red Springs—it indicates the railroad yard, where the switch engine or other trains can use the main line without protection. They generally slowed down before getting to that crossing, because it is in the city limits. . . . The first thing that I noticed was Mr. Rutledge applying the emergency brakes. With respect to the time he struck the automobile, it all happened about the same time, and it was very quick. I observed, when the engine struck the automobile, that it mounted, and the train was derailed on the crossing. It mounted it when it struck; whatever it struck, it run over the top of it."

Evidence was introduced by plaintiff to sustain his allegations. They were denied by defendant, and evidence introduced to contradict plaintiff's allegations.

The issues submitted to the jury, and their answers thereto, are as follows:

1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. If so, what damage is plaintiff entitled to recover of the defendant? Answer: Disability, $15,000; mental and physical suffering, $7,500—$22,500.

Judgment was rendered on the verdict, to which defendant excepted, and appealed to the Supreme Court. There are thirty exceptions and assignments of error. The material ones we will consider in the opinion, without doing so *seriatim*.

*Douglass & Douglass and R. N. Simms for plaintiff.*
*Thomas W. Davis and Murray Allen for defendant.*

CLARKSON, J. This action was brought under the Federal Employers' Liability Act (35 U. S. Stat. at L., p. 65, ch. 149) and the Federal Boiler Inspection Act (36 U. S. Stat. at L., p. 913, ch. 103), and the amendments thereto. The defendant was engaged and the plaintiff was employed in interstate commerce.

The material parts of the two statutes, and the amendments thereto, and rules promulgated and applicable to this case, are as follows, to wit, (Italics ours, as set forth in act and rules):

. EMPLOYERS' LIABILITY ACT.

"SECTION 1. That every common carrier by railroad, while engaging in commerce between any of the several States, . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce (in case of death of such employee, etc.), . . . for such injury or death resulting in *whole* or in *part* from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defects or insufficiency due to its negligence in its cars, . . . appliances, . . . or other equipment.

"SEC. 3. That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided,* that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such

common carrier of any statute enacted for the safety of employees *contributed* to the injury or death of such employee.

"SEC. 4. That in any action brought against any common carrier under or by virtue of the provisions of this act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

### BOILER INSPECTION ACT.

"SEC. 2. That from and after the first day of July, 1911, it shall be unlawful for any common carrier, its officers or agents, subject to this act, to use any locomotive engine propelled by steam power in moving interstate or foreign traffic *unless the boiler of said locomotive and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put, that the same may be employed in the active service of such carrier in moving traffic without unnecessary peril to life or limb,* and all boilers shall be inspected from time to time in accordance with the provisions of this act, and be able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided."

The above section was amended on 4 March, 1915, U. S., Statutes at L., p. 1192, ch. 169:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that section two of the act entitled 'An act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their locomotives with safe, suitable boilers and appurtenances thereto,' approved February seventeenth, nineteen hundred and eleven, shall apply to *and include the entire locomotive and tender and all parts and appurtenances thereof.*"

"SEC. 3. That nothing in this act shall be held to alter, amend, change, repeal or modify any other Act of Congress than the said act of February seventeenth, nineteen hundred and eleven, to which reference is herein specifically made, *or any order of the Interstate Commerce Commission promulgated* under the Safety Appliance Act of March second, eighteen hundred and ninety-three, and supplemental acts."

Rule No. 141 (a), promulgated by the Interstate Commerce Commission, and which was in full force and effect 13 December, 1921, the date of the injury, provides: *"Pilots shall be securely attached, properly braced, and maintained in a safe and suitable condition for service."*

Rule No. 152 (a), promulgated by the Interstate Commerce Commission, which was in full force and effect, provides: *"Tender frames shall be maintained in a safe and suitable condition for service."*

Other rules of the Interstate Commerce Commission make the railroad responsible for the design, construction and maintenance of *locomotives and tenders, and all parts thereof,* under its control.

It is not necessary for the plaintiff to plead or prove the aforementioned statutes as the Court will take judicial notice thereof.

In 25 Ruling Case Law, sec. 209, it is stated: "Judicial notice will be taken of public acts of Congress, not only by the courts of the United States, but by the courts of the several states and territories. Federal statutes need not be pleaded in the state courts. In construing a Federal statute, a state court is bound by the construction placed on it by the Federal courts." *Seaboard Air Line Railway Co. v. Duval,* 225 U. S., p. 477.

Exceptions and assignments of error were made to the following questions asked plaintiff and answers thereto:

"Q. Have you an opinion, satisfactory to yourself, based upon your knowledge and experience as a locomotive engineer as to whether a locomotive engine of that type, and operated at the speed at which that was operated, would mount an obstruction if the pilot was in good condition? Answer: 'Yes.'

"Q. What is it? Answer: 'If the pilot had been in good condition I do not believe that it would.'

"Q. Mr. Mangum, do you know the effect a defective condition of the pilot would have upon a locomotive engine in case of a collision with a Chevrolet automobile on the track? Answer: 'Yes.'

"Q. What effect, if any, would decayed ribs of pilot of engine No. 63 have upon the engine in case of collision with a Chevrolet on the track? Answer: 'The pilot would be demolished and would allow the automobile to go under the engine and cause a derailment.'

"Q. Would the effect be the same with all automobiles? Answer: 'Yes.'"

It was contended by the defendant that the court below in the answers to the foregoing questions permitted the witness to express an opinion upon the very matter to be passed upon by the jury. It was in evidence that the wood on the pilot to the engine had been permitted to become decayed and rotten.

It was in evidence that the plaintiff was an expert, skilled and experienced locomotive engineer and his answers to the questions propounded to him were based upon his knowledge and experience as a locomotive engineer. He was thoroughly familiar with the engine, its speed, the weight of the train, the track and roadbed, and he was fully

qualified to express an expert opinion as to whether such locomotive, equipped with a proper pilot, would, in case of collision, mount an obstruction. The plaintiff's testimony in this regard was but "expert testimony on the facts," based upon his knowledge and experience with such conditions and instrumentalities. We think the evidence was admissible. *Shaw v. Handle Co., ante*, p. 232 and cases cited.

"For the plaintiff to recover under the Federal Employers' Liability Act it is not sufficient that he prove negligence and injury under conditions within the terms of the act. To create a jury issue, the plaintiff must introduce proof tending to show that the alleged negligence was the proximate cause of the damage. The character of evidence necessary to prove such causation must depend largely upon the circumstances of each case. . . . An injury which is the natural and probable result of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury that could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either the remote cause, or no cause whatever of the injury. The natural consequence of an act is the consequence which ordinarily follows it, the result which may reasonably be anticipated from it. A probable consequence is one that is more likely to follow its supposed cause than it is not to follow it." Roberts on Federal Liability of Carriers, Vol. 1, sec. 548, pp. 942, 944.

In Wood on Railroads, Vol. 2, p. 1438, the matter is well stated: "But a wrongdoer is responsible for all consequences that ensue in the ordinary and natural course of events, although those events are brought about by the intervening agency of others, provided the intervening agency was set in motion by the primary wrongdoer, *or the acts causing the damage were the necessary or legal and natural consequences of the original wrongful act.*" (Italics ours.)

The defendant contends that regardless of the condition of the pilot, the real cause of the accident was the negligent conduct of the driver of the automobile in going on the track in front of an approaching train, that the entire evidence in the case establishes as a matter of law that the plaintiff's injuries resulted from the intervening negligent act of an independent third party, for which the defendant is not liable, and defendant's motion for nonsuit should be allowed. We cannot so hold. To sustain its position, the case of *Harton v. Telephone Co.*, 146 N. C., p. 429, is cited.

That case, in general, decides, when it was shown by the evidence that the defendant's telephone pole had fallen upon a public road, and that intelligent third persons, not agents of the defendant and acting without its knowledge, or its knowledge of the conditions, replaced the pole in

the hole in such manner as to make it insecure and unsafe for travelers along the road, and that the plaintiff's intestate, free from negligence, was injured about half an hour thereafter by the falling of the pole, the question of the defendant's negligence, if any, was eliminated by the intervening act of third persons, constituting the proximate cause; and it was error in the court below to refuse to instruct the jury that, if they found the evidence to be true, the plaintiff could not recover.

The facts in that case are not analogous to the one at bar. It was the *duty* of the defendant to equip its engine with a pilot (commonly known as a cow-catcher) which *"shall be securely attached, properly braced and maintained in a safe and suitable condition for service."* The purpose of the pilot was to remove obstructions from the track— to clear the way—and so constructed as to throw the object struck off of the·track. In the instant case it was shown that the pilot was old, worn, rotten and defective, and instead of throwing the automobile from the track, on account of the defective condition of the pilot, when the engine struck the automobile, it mounted it and the train was derailed at the crossing, and plaintiff injured.

The plaintiff's evidence showed that the pilot to the engine was defective and rotten and the frame of the tender was defective. When the pilot, or cow-catcher, struck the automobile it mounted the automobile and the train was derailed and plaintiff injured. The speed of the train and the defective condition of the tender, the trailing cars of the train were hurled against the tender breaking it loose from its bed and pinning plaintiff in between the top part of the tender and the rear end of the engine.

The decisions of this State, and the United States which are applicable here, under the facts and circumstances of this case, do not, we think, bear out defendant's contentions.

In *White v. Realty Co.,* 182 N. C., p. 537, this Court said: "There may be two or more proximate causes of an injury; and where this condition exists, and the party injured is free from fault, those responsible for the causes must answer in damages, each being liable for the whole damage instead of permitting the negligence of the one to exonerate the others. This would be so though the negligence of all concurred and contributed to the injury, because with us, there is no contribution among joint tort feasors. *Wood v. Public Service Corp.,* 174 N. C., 697." *Hinnant v. Power Co.,* 187 N. C., 295.

The court below instructed the jury, in part, as follows: "As to the first issue, the plaintiff asks you to answer it 'Yes.' The defendant asks you to answer it 'No.' Before you can answer it in the affirmative the plaintiff must offer evidence, which from the greater weight, satisfies you that the defendant has been guilty of some breach of duty which it

owed to the plaintiff, that is to say, that it has been guilty of negligence, and that such negligence was the proximate cause of the plaintiff's injury, under the instructions that I have already given you, and that I will now give you upon this particular point. You may understand, gentlemen, that there may be more than one proximate cause of an injury. By proximate cause is meant that which in natural and continuous sequence, unbroken by any new and independent cause, produces the injury, and, without which, the injury would not have occurred. It is the cause which directly produces the result, and, without which, the injury complained of would not have occurred. To show that other causes occurred in producing or contributing to the injury complained of is no defense to an action for negligence. So that, where there are two or more efficient proximate causes, all contributing to an injury, if the defendant's negligence produces one of such causes, it would be liable. To state the rule differently: there may be two or more proximate causes of any injury, and where this condition arises, and the injured party is free from fault, those responsible for the causes must answer in damages, each being liable for the whole damage, instead of allowing the negligence of one to exonerate the others. This would be true, although the negligence of all concurred and contributed to the injury, because under the laws of this State, there is no such thing as contribution among those jointly liable for an actionable wrong. Therefore, gentlemen, it being admitted that the driver of the automobile was negligent, and that such negligence on his part was one of the proximate causes of the plaintiff's injuries, it remains for you to inquire and ascertain from this evidence whether or not the defendant was negligent, and, if so, was such negligence the proximate or one of the proximate causes of such injury, for if the plaintiff's injury was due in whole or in part to any act of negligence on the part of the defendant, that is to say, that such negligence was one of the proximate causes thereof, then he would be entitled to recover, and it would be your duty to answer the first issue 'Yes.' Now, gentlemen, you will remember that the burden is upon the plaintiff as to both issues; and before you can answer either in his favor, he must satisfy you by the greater weight of the evidence, first that the defendant has been negligent in one of the ways alleged in the complaint, and that such act or acts of negligence was the proximate or contributing cause of his injuries, and if you do so find, it will be your duty to answer the first issue 'Yes.' "

Several exceptions and assignments of error were duly made to the foregoing charge. We cannot sustain them. We think the charge proper under the facts and circumstances of this case.

"Liability is shown under the Federal act when the plaintiff proves that the injury or death was due either 'in whole or in part' to negligence

of the defendant. This phrase is an adoption of the common-law doctrine of concurrent causes. Although causes for which the carrier is not liable contributes directly to produce the injury, yet if a cause of which the carrier is liable, that is, a negligent act of any other employee or a defect or insufficiency due to negligence in equipment or works, contributes also as a cause, without which the injury would not have occurred, the carrier is still liable. The quoted phrase means nothing more or less than that the negligent act must be the proximate cause under the Federal (act) of the injury and, in cases of doubt, to ascertain when a negligent act is the proximate cause under the Federal law, decisions of courts passing upon such questions under the common law, are applicable." Roberts on Federal Liabilities of Carriers, vol. 1, sec. 538, p. 945.

Mr. Chief Justice White, in Grand Trunk Ry. Co. v. Lindsay, 233 U. S., p. 47, affirms what was said by the Court in 201 Fed. Rep., p. 844: "If, under the Employers' Liability Act, plaintiff's negligence, contributing with defendant's negligence to the production of the injury, does not defeat the cause of action, but only lessens the damages, and if the cause of action is established by showing that the injury resulted 'in whole or in part' from defendant's negligence, the statute would be nullified by calling plaintiff's act the proximate cause, and then defeating him, when he could not be defeated by calling his act contributory negligence. For his act was the same act, by whatever name it be called. It is only when plaintiff's act is the sole cause—when defendant's act is no part of the causation—that defendant is free from liability under the act."

In Texas & Pacific Ry. v. Rigsby, 241 U. S., p. 43, the defendant in error Rigsby, an employee a switchman, was injured on account of defect in one of the hand-holders or grab-irons that formed the rungs of the ladder when descending from the car. Mr. Justice Pitney, said: "The question whether the defective condition of the ladder was due to defendant's negligence is immaterial, since the statute imposes an absolute and unqualified duty to maintain the appliance in secure condition. St. Louis & Iron Mountain Ry. v. Taylor, 210 U. S., 281, 294, 295; Chicago B. & Q. Ry. v. United States, 220 U. S., 559, 575; Delk v. St. Louis & San Francisco R. R., 220 U. S., 580, 586." Great Northern R. R. v. Donaldson, 246 U. S., 121; San Antonio & A. P. R. R. Co. v. Wagner, 241 U. S., 476; Minneapolis & St. Louis R. R. Co. v. Gotschall, 244 U. S., p. 66.

Mr. Justice Pitney, in Spokane & I. E. R. R. Co. v. Campbell, 241 U. S., 509, said: "Upon the whole case, we have no difficulty in sustaining his right of action under the Employers' Liability Act. That act (sec. 1, 35 Stat., 65) imposes a liability for injury to an employee 'resulting in whole or in part from the negligence of any of the officers, agents,

or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, . . . or other equipment.' As was held in *San Antonio & Arkansas Pass Ry. v. Wagner,* decided 5 June, 1916, *ante,* p. 476, a violation of the Safety Appliance Act is 'negligence' within the meaning of the Liability Act. And by the proviso to section 3 of the latter act, no employee injured or killed shall be held to have been guilty of contributory negligence in any case where a violation of the Safety Appliance Act 'contributed to the injury or death of such employee.' It is too plain for argument that under the legislation the violation of the Safety Appliance Act need not be the sole efficient cause, in order that an action may lie."

The case of *Davis v. Kennedy,* decided 17 November, 1924, by the Supreme Court of the U. S., *Mr. Justice Holmes,* delivering the opinion of the Court, is in no way applicable to the facts here. In that case there was a collision, the sole cause was the conduct of the engineer. The Court says: "It was the personal duty of the engineer positively to ascertain whether the other train had passed. His duty was primary as he had physical control of No. 4, and was managing its course. It seems to us a perversion of the statute to allow his representative to recover for an injury directly due to his failure to act as required on the ground that possibly it might have been prevented if those in secondary relation to the movement had done more. *Frese v. Chicago, Burlington & Quincy R. R. Co.,* 263 U. S., 1, 3."

The court below withdrew the speed of the train and lookout from the jury's consideration and limited the issue of negligence to defective pilot and tender.

In *Michigan Central R. R. Co. v. Vreeland,* 227 U. S., p. 65, *Mr. Justice Lurton,* construing the Federal Act, said: "It plainly declares the liability of the carrier to its injured servant. If he survived he might have recovered such damages as would have compensated him for his expense, loss of time, suffering and diminished earning power." *Chesapeake, etc., R. R. v. Carnahan,* 241 U. S., p. 241, 36 S. Ct., 594; Richey on Federal Employers' Liability (2 ed.) sec. 178, 179, p. 364, 365.

The measure of damages, under the Federal Employers' Liability Act, for wrongful injury must be settled according to the principles of law as administered in the Federal Courts. In the present case, without any exception, the issues as to damages were made dividable—first, as to the amount recoverable for "disability" and, second, for "mental and physical suffering." This Court has substantially followed the Supreme Court of the United States in regard to damages of this nature, and in the case of *Ledford v. Lumber Co.,* 183 N. C., p. 616, it is said: "In cases like the one at bar, if the plaintiff be entitled to recover at all, he is entitled to recover as damages one compensation—in a lump sum—for all

injuries, past and prospective, in consequence of the defendant's wrong-ful or negligent acts. These are understood to embrace indemnity for actual nursing and medical expenses and loss of time, or loss from inability to perform ordinary labor, or capacity to earn money. Plaintiff is to have a reasonable satisfaction (if he be entitled to recover at all) for loss of both bodily and mental powers, or for actual suffering, both of body and mind, which are the immediate and necessary consequences of the injury. And it is for the jury to say, under all the circumstances, what is a fair and reasonable sum which the defendant should pay the plaintiff, by way of compensation, for the injury he has sustained. The age and occupation of the injured party, the nature and extent of his business, the value of his services, the amount he was earning from his business, or realizing from fixed wages, at the time of the injury, or whether he was employed at a fixed salary, or as a professional man, are matters properly to be considered. *Rushing v. R. R.,* 149 N. C., 158. The sum fixed by the jury should be such as fairly compensates the plaintiff for injuries suffered in the past and those likely to occur in the future. The award is to be made on the basis of a cash settlement of the plaintiff's injuries, past, present and prospective. *Penny v. R. R.,* 161 N. C., 528; *Fry v. R. R.,* 159 N. C., 362."

The court below fully set forth the contentions of the parties. Near the conclusion of the statement of the plaintiff's contentions, the court stated: "He (plaintiff) is asking you to find that his (plaintiff's) injuries are not only serious and permanent, but that he is now suffering a total disability, and he is asking you to award to him a lump sum of money that will be equivalent to the present value of his diminished earning capacity; and in addition thereto such amount as you may find would be due him for his mental and physical suffering." After proceeding, with much fairness to defendant, to review at length the defendant's contentions concerning the elements and manner of ascertaining the damages, the court below said: "Now, gentlemen of the jury, having given you some of the contentions of the parties as I understand them, I will proceed to lay down for your guidance certain rules to be followed by you in estimating the plaintiff's damages in this case. If the plaintiff is entitled to recover at all, he is entitled to recover the reasonable present value of his diminished earning capa-city in the future, and his loss of time in the past; and where future payments of money, such as wages for labor, are to be anticipated by the jury, and capitalized into a verdict, the plaintiff is only entitled to the present value thereof. In other words, the damages to be awarded to the plaintiff, if at all, because of his diminished earning capacity, would be a sum of money equal to the present worth of such dimunition, and not the aggregate amount of such earnings during his expectancy

of life. Your answer to this last issue will embrace two figures, first, the present worth of his diminished earning capacity, and in addition thereto, a reasonable compensation for his physical and mental suffering." The court, we think, laid down the correct rule then gave illustrations which perhaps may be objectionable to which defendant excepted and made assignments of error. In the illustrations the court below said: "I have used the above figures merely for the purpose of illustration and not for the purpose of influencing you in arriving at any definite sum." The defendant did not ask any specific instruction as to the measure of damages.

Taking the charge as a whole, we cannot hold it prejudicial or reversible. In *Cobia v. R. R., ante,* p. 492, it is *held:* "It is now settled law that the charge of the court must be considered and examined by us, not disconnectedly, but as a whole, or at least the whole of what was said regarding any special phase of the case or the law. The losing party will not be permitted to select detached portions of the charge, even if in themselves subject to criticism, and assign errors as to them, when, if considered with other portions, they are readily explained and the charge in its entirety appears to be correct. Each portion of the charge must be considered with reference to what precedes and follows it. In other words, it must be taken in its setting. The charge must be viewed contextually and not disjointedly. Any other rule would be unjust, both to the trial judge and to the parties. *Exum v. Lynch, ante,* 392."

The record shows that the plaintiff had been for years a faithful employee of defendant company. He was at his post of duty on the engine when seriously and permanently injured and admittedly free from blame. The pilot, or cow-catcher, to the engine that was placed to remove obstructions and keep the track clear by throwing obstructions off, was rotten and defective and caused the engine to mount the automobile when it ran in front of the engine and derailed the train and injured the plaintiff. The tender to the engine was defective and he was caught between it and the engine.

These facts were established in the court below by competent evidence. The court gave fairly and fully the contentions of the defendant. The jury under proper instructions from the court have rendered their verdict in favor of plaintiff. We have read the record and briefs carefully, examined all the exceptions and assignments of error, and can find no reversible or prejudicial error.

No error.