POLLY PADERICK, ADMINISTRATRIX OF WILLIE PADERICK, DECEASED, v.
GOLDSBORO LUMBER COMPANY.

(Filed 21 October, 1925.)

**1. Pleadings—Evidence—Variation—Appeal and Error.**

*Held,* the proof in this case was not at sufficient variation with the allegations of the complaint as to make its admission reversible error.

**2. Employer and Employee—Negligence—Independent Contractor—Safe Place to Work.**

An employee of an independent contractor to haul timber from the woods and load cars at a certain price per thousand, with implements and machinery of the defendant engaged in this business, is to be regarded as an employee of the defendant in respect to exercising reasonable care in furnishing safe appliances to do the work, etc., and make the defendant liable for a negligent defect in the machinery that proximately caused the injury, the subject of the action for damages.

**3. Negligence—Intervening Cause—Proximate Cause.**

Where the employer in the exercise of reasonable care was negligent in furnishing his employee a defective skidder or machine for handling or loading logs on cars, which resulted in a log falling, striking a small

tree on its way down hill and rebounding upon the employee to his injury and death: *Held*, the negligent act of the employer reaches through to the resultant injury, and the doctrine of intervening or independent cause has no application.

VARSER, J., not sitting.

APPEAL by defendant from *Devin, J.,* and a jury, April Term, 1925, of ONSLOW. No error.

Polly Paderick was duly appointed and qualified as administratrix of Willie Paderick. She alleges that the Goldsboro Lumber Company is a corporation, with a place of business in Craven County, at Dover, but, that it owns and operates sawmills, logging equipment, railroads, and other machinery and property used in connection therewith, and extends its railroad and logging roads into Onslow and Duplin counties, in said State.

On the 4th day of May, 1923, the defendant was engaged in the cutting and loading on the cars of defendant, timber trees in and along Limestone Swamp, in Duplin County. That as a part of the equipment in said logging business so used by the said defendant, there was included a machine for loading the logs which were brought out of the woods by machinery near to the track of the defendant, on which was the said loading machine. That one L. L. Paderick was looking after the operation of the said machinery, track and cars, and the cutting and loading of the said timber for the defendant at the time and place above set out, but the said operations were done for and by the defendant corporation, which was the owner of all of the said railroad, trains, engines, cars, loading machine and logging equipment, including the loading apparatus which was operated by steam, and the machinery and contrivances by which the said timber trees were pulled out of the swamp to the track for loading purposes, and when so loaded they were carried by the said defendant to its mills for manufacturing purposes.

She contends that her intestate was killed due to the negligence of the Goldsboro Lumber Company, in that, in connection with these operations, they used a loader or skidder, which was defective in respect to the boom and in other respects, and while in their employ, in connection with others, in pulling logs up to the loader, that a log was pulled up, and by reason of the defective condition of the loader, the log was placed in improper position where it could not be handled properly, and in their effort to place it right, by reason of this defective machinery, the log was caused to roll, and struck against a tree, which caused it to be thrown violently against the plaintiff's intestate, and

caused his death, and that this was due to the negligence of the Goldsboro Lumber Company in this respect among others.

The defendant, Goldsboro Lumber Company, answers in which it denies that it was in anywise negligent, in causing the death of Willie Paderick, and sets up certain defenses It sets up the defense and contends that Willie Paderick was not in the employ of the Goldsboro Lumber Company, but was in the employ of L. L. Paderick, who was an independent contractor, in respect to whose operations this defendant had no control, and therefore his death was not due to any negligence upon its part, and denies that it was negligent in respect to the condition of the loader or skidder, and alleges that its condition was such as was approved and in general use in this territory in operations of like character, and sets up the further defense, that the death of Willie Paderick was due to his own want of care with respect to his own safety, that he was guilty of contributory negligence, and that he failed to keep a proper lookout and permitted himself to be struck by a falling tree, when in the exercise of due care, he could have seen it and have avoided being hit, and denies any liability for his death:

L. L. Paderick testified for plaintiff, after describing the defect in the machine, as follows: "I told Capt. Tom Lowry of the condition of the machine. It was the company's business to keep it in repair. It was not many days, not two weeks before this happened that I called the company's attention to the condition of the machine. Nothing was done to repair the condition of the machine. Mr. Lowry said he did not have a blacksmith to put it in work and for me to go ahead with the machine and handle it the best I could handle it until they could get some one to fix it. They never fixed the machine."

T. F. Sanders, for plaintiff, testified: "I asked Mr. T. F. Lowry (working for defendant as foreman of the woods) why he did not fix that machine so we could do something with it, and he said: 'We cannot do anything with that machine in the shape the boom is in.' He said he kept thinking he would have something done, but kept putting it off, did not have anybody to do it."

T. F. Lowry, on cross-examination, said: "He, Paderick, did come to me, and I told him I would have it fixed, but that I did not have a blacksmith. Mr. Sanders also came and reported its condition. I told him that it ought to be fixed and was going to do it. I just have things fixed when they need to be fixed."

The issues submitted to the jury and their answers thereto were as follows:

"1. Was L. L. Paderick independent contractor of Goldsboro Lumber Company, and was plaintiff's intestate in the employ of said independent contractor at the time of his injury, and death? Answer: Yes.

"2. Was the plaintiff's intestate killed by the negligence of Goldsboro Lumber Company, as alleged in the complaint? Answer: Yes.

"3. Did the plaintiff's intestate, by his own negligence contribute to his injury and death as alleged in the answer? Answer: No.

"4. What damages, if any, is plaintiff entitled to recover of the defendant? Answer: $2,500.00."

Many exceptions and assignments of error were made by defendant. There was a judgment on the verdict and appeal taken to the Supreme Court. Other material facts will be stated in the opinion.

*N. E. Day and Cowper, Whitaker & Allen for plaintiff.*
*Bailey & Warlick and T. D. Warren for defendant.*

CLARKSON, J. The jury found that L. L. Paderick was an independent contractor and the plaintiff's intestate, Willie Paderick, was in his employ at the time of his death.

It is contended by defendant that the proofs do not correspond with the allegations. This is true in part, but not to such a material extent, under our liberal practice, that it would be reversible error; especially is this so on the theory on which the case was tried in the court below. The first issue being found that L. L. Paderick was an independent contractor, the serious matters for our consideration are: What duty, if any, did defendant owe the plaintiff's intestate? If he owed a duty, was the failure in the performance of that duty negligence, and was that negligence the proximate cause of plaintiff's intestate's injury? Did plaintiff's intestate contribute to his own injury? The main assignment of error is to the refusal of the court below to sustain the defendant's motion of nonsuit at the close of plaintiff's evidence and at the close of all the evidence.

The evidence, taken in the light most favorable to plaintiff, tended to show that the defendant was in the lumber business. It owned the lumber in the woods. It employed L. L. Paderick to get the lumber out of the woods and paid him $3.00 a thousand feet for the lumber loaded on the defendant's cars. L. L. Paderick employed plaintiff's intestate and other help. Defendant had a railroad with cars on which the lumber was loaded to be transported in the course of its business to its manufacturing plant. The defendant furnished L. L. Paderick the "skidder" or "loader," hereafter termed loader, to place the logs on its cars for transportation. The loader that defendant furnished, it was contended, was defective—out of repair. This was called to the attention of the defendant's foreman in the woods, and it is contended that he promised a short time before plaintiff's intestate was killed to

repair it—this was not done. In operating the loader in a careful manner, on account of its defective condition, it caused the log being placed to roll and veer and strike a small cypress tree about thirty feet high and it was whipped down on plaintiff's intestate, who was standing nearby, and killed him.

Under the facts and circumstances of this case, defendant having agreed with L. L. Paderick to furnish the loader, in so far as L. L. Paderick and those in his employ are concerned, in the operation of the loader, the principle of master and servant was applicable. It was then the duty of the defendant, as was said in *Riggs v. Mfg. Co., ante,* p. 258: "That an employer of labor, in the exercise of reasonable care, must provide for his employees a safe place to do their work and supply them with machinery, implements, and appliances safe and suitable for the work in which they are engaged, and to keep such implements, etc., in safe condition as far as this can be done by the exercise of proper care and supervision," citing numerous authorities. 14 Enc. Dig. of N. C., sec. 42, p. 761.

We think on this aspect of the case that the learned judge who tried this cause in the court below carefully followed the principles of law herein set forth, and charged the jury substantially in the language of the decisions of this Court. As to the defect in the loader, a disputed fact, this was left to the jury.

The defendant contends that if it was negligent, its negligence was not the proximate cause of the injury. Proximate cause has been recently discussed in *Whitehead v. Telephone Co., ante,* 197. The facts in that case are different from those in the present case.

The defendant further contends that the injury was accidental or improbable, not the natural and probable result of the act if caused by the negligence of defendant. After a careful review of the authorities cited, we cannot so hold. The principle laid down in *Ridge v. R. R.,* 167 N. C., 525, is thus stated: "Where the master's negligence contributes to the result, although there may be a coöperating cause not due to the servant's act, the law will not undertake to apportion the liability, but will hold him responsible to the servant in the same degree and with the same consequences as if his negligence had been the sole cause of the injury. *Steele v. Grant,* 166 N. C., 635; *Wade v. Contracting Co.,* 149 N. C., 177. As said in the oft-cited case of *Kellogg v. R. R.,* 94 U. S., 469, 475, 'The inquiry must, therefore, always be whether there was any intermediate cause *disconnected* from the primary fault, and *self-operating,* which produced the injury.' In this case there was no intermediate, or intervening, independent and efficient cause, which, operating alone, was sufficient of itself to break the connection between defendant's negligence and the injury, and the

primary wrong must be considered as reaching from the beginning to the effect, and, therefore, as proximate to it. *Hardy v. Lumber Co.,* 160 N. C., at pp. 124, 125; *Kellogg v. R. R., supra; Ins. Co. v. Boon,* 95 U. S., 619. The windstorm would not, of itself, have caused the injury, as the testimony shows, when viewed favorably for the plaintiff; but it required the concurrence and coöperation of the defendant's negligence in having a defective car to produce the disastrous result." *Lamb v. R. R.,* 179 N. C., 622-623; *Davis v. Shipbuilding Co.,* 180 N. C., 76; *Page v. Mfg. Co., ibid.,* 334; *Tatham v. Mfg. Co., ibid.,* 629; *Saunders v. R. R.,* 185 N. C., 290; *Mangum v. R. R.,* 188 N. C., 695. Under the facts here, the effect was the natural and probable result and sequence of the cause—the defective loader. In fact, several anticipated the result, it was foreseen and called to defendant's foreman's attention to make repair, but of no avail. The consequences defendant should not now complain of—warning and notice were given it of the defective loader and it knew the place in which it was being operated and the surroundings. In fact, at the request of the defendant, this was left to the jury to determine in the prayer for instructions asked by defendant: "Unless you find that the defects of the skidder complained of and testified to were the proximate cause of the injury to, and death of (Willie) J. W. Paderick, you would answer second issue 'No,' and fourth issue 'Nothing.'"

The question of contributory negligence was left to the jury under proper instructions. The "less insurance" controversy, from the findings of the jury on the first issue, was in no way prejudicial—perhaps, it was competent on that issue. The record shows that the objection by defendant was sustained. There was no request by defendant to caution the jury—if error, it is too late now to complain.

The pathos of the case—a witness testified: "Willie Paderick was unmarried, lived with his mother, was twenty-three years old at the time of his death, received $2.00 a day. As to his habits for sobriety, he was like me, just a hard-working man and tried to take care of his mother. He was sober and in good health and used his money on his home and his mother."

From a careful review of the whole case, we can find no prejudicial or reversible error.

No error.

VARSER, J., not sitting.