The allegations in the complaint, in part, are as follows:
"3. That on and prior to December 28, 1939, the defendant was engaged as general contractor in the erection of a residence known as the Evans residence at Laurinburg, North Carolina.
"4. That under the contract between the owner of said residence and said Southeastern Construction Company, the Southeastern Construction Company was obligated to cover said residence with a slate roof of a particular kind, as set out in the contract between said parties.
"5. That the defendant sublet the contract for furnishing and installing the slate roof on said residence to Glasgow-Allison Company, a corporation.
"6. That the plaintiff, at the time of the injury hereinafter referred to, was employed by Glasgow-Allison Company to assist in installing the slate roof on the said residence as hereinbefore referred to.
"7. That prior to the letting of the subcontract for the furnishing and installation of the slate roof on said residence hereinbefore referred to, there had been a long course of dealing between Southeastern Construction Company and Glasgow-Allison Company involving similar subcontracts, and it was understood between said parties, pursuant to the course of dealing between them, that the necessary scaffolds to be used in the installation of the roof on said dwelling would be furnished by the defendant, Southeastern Construction Company.
"8. That the defendant, Southeastern Construction Company, did cause to be erected a scaffold, or scaffolds, along the walls of the residence hereinbefore referred to and slightly below the edge of the roof of said residence.
"9. That the defendant, Southeastern Construction Company, furnished to Glasgow-Allison Company, the employer of the plaintiff, the necessary scaffolds to be used in connection with the installation of the roof on said residence.
"10. That the Southeastern Construction Company, through its foreman or superintendent, gave Glasgow-Allison Company and its employees permission to use the scaffold hereinafter referred to.
"11. That Glasgow-Allison Company and its employees, including the plaintiff, used the scaffolds erected by the defendant in connection with the construction of the residence hereinbefore referred to with the knowledge of the Southeastern Construction Company, and had so used them for some time prior to the injuries hereinafter referred to. *Page 527 
"12. On the 25th day of December, 1939, while the plaintiff and two other employees of Glasgow-Allison Company were standing upon one of the scaffolds furnished and erected by Southeastern Construction Company, said scaffold fell to the ground.
"13. That the fall of said scaffold to the ground and the injuries resulting to the plaintiff therefrom, as hereinafter alleged, were proximately caused by the negligence of the defendant, in that:
"(a) The defendant furnished to Glasgow-Allison Company, to be used by its employees, including the plaintiff, a defective scaffold.
"(b) The defendant negligently constructed said scaffold from defective material causing it to break and give way and causing the scaffold to fall, and, in particular, furnished and used in said scaffold timbers as supports for the floor of said scaffold which were doughty and decayed and had large knots running entirely through said pieces of timber, and said timbers were of insufficient strength to support the weight which might reasonably be expected to be upon said scaffold.
"(c) The defendant, its agents, servants and employees, negligently failed to properly inspect the timbers used in the erection of said scaffold, and failed to properly inspect said scaffold both before and after its completion.
"(d) The defendant, through its servants, agents and employees, negligently removed a support from said scaffold without warning the plaintiff thereof when the defendant knew that the plaintiff and his coemployees of Glasgow-Allison Company were using said scaffold for the purpose of standing on the same while they placed the slabs of slate upon the roof of said residence and fastened them thereto.
"(e) The defendant undertook to furnish a scaffold for the use of the plaintiff and other employees of Glasgow-Allison Company and failed to exercise due care to furnish a scaffold which was reasonably safe for the purpose for which it was to be used.
"(f) The defendant invited and permitted the plaintiff and other employees of Glasgow-Allison Company to use said scaffold and failed to exercise reasonable care to see that the said scaffold was reasonably safe for said purpose, but, on the contrary, furnished a scaffold which was built at least in part of weak and defective material.
"(g) The defendant negligently and carelessly failed to exercise due care to keep and maintain said scaffold in a reasonably safe, or proper condition.
"14. That, as a proximate result of the negligence of the defendant, as hereinbefore alleged, the said scaffold, with the plaintiff upon it, fell a distance of approximately twenty feet to the ground causing the plaintiff to sustain compression fractures of two or more of his vertebrae, a severe laceration of the right thumb, together with serious and painful injuries *Page 528 
and bruises on various parts of his body; and severe sprains of his muscles and joints; that, as a result thereof it was necessary for the plaintiff to be treated in a hospital, and to be put in a plaster of paris cast for a period of several weeks, after which he has been compelled to wear a tight-fitting plaster of paris jacket; that he has incurred expenses for hospital and medical treatment; that he is informed and believes that he has permanent injuries to his back, his thumb and his hip joints; that he is unable, on account thereof, to engage in the roofing trade for which he is trained; that his earning capacity has been seriously and permanently impaired; that he has suffered and will continue to suffer intense pain of body and agony of mind; that he will continue to incur medical expenses, and that his injuries are lasting and permanent, and that he has been damaged by the negligence of the defendant," setting forth the amount.
The defendant denied negligence, and in its further answer and defense set up, (1) plea of abatement, the lack of jurisdiction. If defendant was liable the parties were subject to the "N.C. Workmen's Compensation Act" — N.C. Code, 1939 (Michie), ch. 133-A; (2) plea of contributory negligence; (3) assumption of risk; (4) negligence of fellow servant.
The defendant demurred ore tenus to the complaint: "(1) That the complaint does not state facts sufficient to constitute a cause of action against the defendant in that it appears from the face of the complaint: (a) The plaintiff at the time mentioned in the complaint was an employee of Glasgow-Allison Company, a corporation; (b) that Glasgow-Allison Company, a corporation, was an independent contractor; (c) that the defendant, Southeastern Construction Company, was the general contractor; (d) that the relationship of master and servant did not exist between the plaintiff and the defendant; (e) that the work in which the plaintiff was engaged at the time mentioned in the complaint was not inherently or intrinsically dangerous; (f) that the defendant owed no duty to the plaintiff, and was guilty of no breach of duty to the plaintiff; (g) that the duty, if any by anybody, to furnish the plaintiff a reasonably safe place in which to work was the duty of his employer, Glasgow-Allison Company, and not the duty of the defendant." The court below sustained the demurrer.
The plaintiff excepted, assigned error to the signing of the judgment and appealed to the Supreme Court.
N.C. Code, 1939 (Michie), sec. 511, is as follows: "The defendant may demur to the complaint when it appears upon the face thereof, either that: . . . (6) The complaint does not state facts sufficient to constitute a cause of action."
In Leonard v. Maxwell, Comr., 216 N.C. 89 (91), the well settled rule is: "The office of a demurrer is to test the sufficiency of a pleading, admitting, for the purpose, the truth of factual averments well stated and such relevant inferences as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader," citing authorities.
The question involved: Under the facts and circumstances of this case, did defendant owe to plaintiff any duty — (1) In reference to seeing that the scaffold was of sufficient strength for the intended purpose and not built of defective material, or (2) not to remove a support from the scaffold while employees were at work upon it without warning such employees.
Does the complaint allege facts imposing a duty on the part of the defendant to exercise due care in reference to the plaintiff? We think so.
The allegations of the complaint show that the defendant was engaged in building the "Evans" residence at Laurinburg, N.C. In building the residence the defendant erected a scaffold for the purpose, slightly below the edge of the roof. The defendant employed the Glasgow-Allison Company to install the slate roof and the Glasgow-Allison Company employed plaintiff to aid in the work. Permission was given Glasgow-Allison Company and its employees to use the scaffold. It is alleged, "There had been a long course of dealing between Southeastern Construction Company and Glasgow-Allison Company involving similar sub-contracts, and it was understood between said parties, pursuant to the course of dealing between them, that the necessary scaffolds to be used in the installation of the roof on said dwelling would be furnished by the defendant, Southeastern Construction Company."
The scaffold was used by plaintiff in his work in helping to slate the roof. The scaffold did not belong to the Glasgow-Allison Company, but to the defendant. It was left for the use of workmen who had to use the scaffold to perform the work of slating the roof. The scaffold was used with the knowledge of defendant. The scaffold was erected by defendant and used by plaintiff in his work, was negligently constructed from defective material. The complaint alleges: "In particular, furnished and used in said scaffold timbers as supports for the floor of said scaffold which were doughty and decayed and had large knots running entirely through said pieces of timber and said timbers were of insufficient strength to support the weight which might reasonably be expected to be upon said scaffold." Defendant failed to inspect the scaffold *Page 530 
before and after its completion. The complaint alleges, "The defendant, through its servants, agents and employees, negligently removed a support from said scaffold without warning the plaintiff thereof when the defendant knew that the plaintiff and his co-employees of Glasgow-Allison Company were using said scaffold for the purpose of standing on the same while they placed the slabs of slate upon the roof of said residence and fastened them thereto," and "Undertook to furnish a scaffold for the use of the plaintiff and other employees of Glasgow-Allison Company and failed to exercise due care to furnish a scaffold which was reasonably safe for the purpose for which it was to be used." On 28 December, 1939, while the plaintiff and two other employees of Glasgow-Allison Company were standing upon one of the scaffolds furnished and erected by Southeastern Construction Company, said scaffold fell to the ground. That the fall of said scaffold to the ground and the injuries resulting to the plaintiff therefrom, as alleged in the complaint, were proximately caused by the negligence of the defendant, as before stated.
The complaint in this case, as in Mack v. Marshall Field Co.,217 N.C. 55, sets forth actionable negligence against defendant — a third person — not against the employer. Therefore, the N.C. Workmen's Compensation Act is not available to defendant.
The defendant owned the scaffold and had not taken it down. No new one was erected by plaintiff's employer for the employees doing the slating. Defendant knowingly permitted plaintiff to use a scaffold made of defective material and of insufficient strength, and removed a support without notice to the employees. Nor did the defendant inspect same. It is alleged that as a proximate result, the scaffold fell with plaintiff and he was permanently injured. We think the complaint alleges a good cause of action against the defendant.
In Campbell v. Boyd, 88 N.C. 129, it is held: "A private way was opened by the defendant for his own convenience and a bridge built over a creek which ran across it, and the public used the same with his knowledge and permission; the plaintiff sustained injury caused by the breaking in of the bridge, which the defendant knew to be unsafe, but which was apparently in good condition: Held, he was liable to the plaintiff in damages. The duty of reparation and the liability for neglect in such cases, rest upon the defendant, by whose implied invitation the public used the way." At p. 131, it is said: "The principle is well settled,' remarks Appleton, C. J., `that a person injured, without neglect on his part, by a defect or obstruction in a way or passage over which he has been induced to pass for a lawful purpose, by an invitation express or implied, can recover damages for the injury sustained, against the individual so inviting, and being in default for the neglect.' Tobin v. P. S. and P. R. R., 59 Maine, 188. . . . (P. 132) The law does *Page 531 
not tolerate the presence over and along a way, in common use, of structures apparently sound, but in fact ruinous, like man-traps, inviting travelers to needless disaster and injury. The duty of reparation should rest on some one and it can rest on none others but those who built and used the bridges, and impliedly at least invite the public to use them also. For neglect of this duty they must abide the consequences."Mulholland v. Brownrigg, 9 N.C. 349; Batts v. Telephone Co., 186 N.C. 120
(121). We think the principle above set forth analogous to the present action. Thomas v. Lumber Co., 153 N.C. 351; Paderick v. Lumber Co.,190 N.C. 308.
In Greer v. Construction Co., 190 N.C. 632 (636), it is written: "InPaderick v. Lumber Co., ante, 308, it was held by this Court that an owner who furnishes defective machinery to its independent contractor, whose employee was killed by the operation of such defective machinery, was liable to the administratrix of such employee for damages. In the opinion it is said: `Under the facts and circumstances of this case, defendant having agreed with L. L. Paderick . . . to furnish the loader, in so far as L. L. Paderick and those in his employ are concerned, in the operation of the loader, the principle of master and servant was applicable.' It was held that the defendant owed to the employee of the independent contractor the duties prescribed by law to be observed by a master to a servant."
It will be noted that the decision in the Paderick case, supra, says: "The principle of master and servant was applicable," not that they were master and servant. That principle is set forth in Clinard v. Electric Co.,192 N.C. 736 (741), as follows: "The degree of care required of an employer in protecting his employees from injury, a few variants of this form may be stated: `It is such care as reasonable and prudent men would use under similar circumstances.' In the words of the Supreme Court of the United States, `The master is bound to observe all the care which prudence and the exigencies of the situation require, in providing the servant with machinery or other instrumentalities adequately safe for use by the latter.' Hough v. Texas P. R. Co., 100 U.S. 213, 24 L.Ed., 612. `Such care as ordinarily prudent persons exercise under the same or similar circumstances.' `He uses that degree of care "which a man of ordinary prudence would use, having regard for his own safety, if he were supplying them (appliances) for his own personal use." (Cotton v. North Carolina R.Co., 149 N.C. 227; Marks v. Harriet Cotton Mills, 135 N.C. 287.)'"
In 27 Amer. Jur., sec. 30, p. 508, we find: "Although one employs an independent contractor to do certain work, and although he thereby escapes liability for the negligence of such contractor, he is nevertheless answerable for his own negligence. In other words, if an injury is *Page 532 
caused by his own negligence, and not by the negligence of the independent contractor, the employment of such contractor is no defense, notwithstanding the injury is occasioned to a person in the employ of such contractor. If the negligence of an employer concurs with the negligence of his independent contractor, and an injury thereby results to a third person, the employer is not absolved from liability because he has employed a contractor. It is obvious that the employer remains liable for the nonperformance of any duties which arise out of the work in question, and which are not devolved upon the contractor. Also, where the employer reserves the right to direct the manner of performance of the contract in any particular, or where he undertakes to provide any of theinstrumentalities, he owes to the contractor and the latter's employees theduty of exercising reasonable care with respect to such matters. Thus, if acontractor agrees to do certain work on a building and the owner imposes onhimself the duty of erecting the necessary scaffolding for the work, hewill be liable for injuries to a servant of the contractor received onaccount of negligence in erection of the scaffold. . . . In accordance withthe familiar principle that every man who expressly or by implicationinvites others to come upon his premises assumes to all who accept theinvitation the duty to warn them of any danger in coming, which he knows ofor ought to know of, and of which they are not aware." (Italics ours.)
Coughtry v. Globe Woolen Co., 56 N.Y. Reports, 124, is a similar case. At p. 128 it is said: "At the time of the injury the scaffold belonged to the defendant, had been erected by it, was in its possession and was being used on its premises, with its permission, for the very purpose for which it had been furnished, and by the persons for whose use it had been provided. The only operation which the contract has in the case is to preclude the defendant from setting up that the defective structure was not its own but that of the contractor. Being conceded to be its own structure, furnished by it for use, the duty of due diligence in its construction arose, not merely out of the contract to furnish it, but from the fact that the defendant did actually furnish it for the express purpose of enabling and inducing the men who were to do the work to go upon it. It is evident from the nature and position of the structure that death or great bodily harm to those persons would be the natural and almost inevitable consequence of negligently constructing it of defective material or insufficient strength. It was clearly the duty of the defendant and its agents to avoid that danger by the exercise of proper care. Thomas v.Winchester, 2 Seld., 397; Godley v. Hagerty, 20 Penn. St. R., 387; Cook v.The N.Y. Floating Dry Dock Co., 1 Hilt., 436. This duty was independent of the obligation created by the contract." *Page 533 
We think the cases cited by defendant distinguishable from the present action. See Pafford v. Construction Co., 217 N.C. 730; Robey v. Keller, U.S. Circuit Court, decided 7 October, 1940.
From the allegations of the complaint, taken as true for the purposes of this demurrer, we think it is a matter for the jury to determine and the nonsuit was improperly granted.
For the reasons given, the judgment of the court below is
Reversed.