15934

BRADLEY v. FOWLER

(42 S. E. (2d) 234)

*Messrs. Whiteside & Taylor,* and *Osborne, Butler & Moore,* all of Spartanburg, for Appellant, cite:

*Messrs. R. A. Hannon* and *Sam R. Watt,* of Spartanburg, for Respondent, cite:

April 7, 1947.

FISHBURNE, AJ.: This appeal brings under review the proceedings in the trial of a tort action, in which the plaintiff was awarded a verdict and judgment in the sum of $10,-000.00, actual damages. The action was brought against the defendant to recover damages for injuries resulting from an explosion of gasoline which, it is alleged, was purchased as kerosene for domestic use.

The first ground of appeal is that the trial court committed error in refusing appellant's motion for a directed verdict based on the ground that the evidence failed to show actionable negligence on the part of appellant which operated as a proximate cause of respondent's injuries.

The circumstances leading up to the tragic occurrence which gave rise to this lawsuit may be thus stated:

The oil in question, purporting to be five gallons of kerosene, was purchased shortly before midnight on Saturday, January 27, 1945, by William Bradley, the brother of respondent, from Tillman Fowler, the appellant, who operated a country store and filling station on the Boiling Springs Road just outside of the city limits of Spartanburg. Bradley, who lived several miles from Spartanburg, accompanied by his brother-in-law, Charlie Mathis, drove to the grocery store in a truck to buy some kerosene and some groceries. Upon arriving at the store he placed his empty five-gallon kerosene can on the ground on the outside of the store, between the gasoline tank and the kerosene oil tank, then went into the store and gave his order for the groceries and five gallons of kerosene to appellant who personally waited upon him. After paying appellant for the groceries and the kerosene (for the latter he gave a ration stamp), he went outside and found the can filled and in approximately the same place he had left it before entering the store.

Appellant had two clerks: one of them usually handled the meat counter in the rear of the store, and the other attended to gasoline and kerosene customers. It may be inferred that it was the latter who filled Bradley's order for kerosene, although he was not called as a witness. Upon reaching his home, which was a two room shack of board construction (one room of which was in such a state of disrepair that it could not be used), Bradley placed the kerosene can by his kerosene stove in the back of the habitable room in its customary place, where it remained unused until the following Monday morning, when the tragedy giving rise to this controversy occurred. On Sunday, January 28th, William Bradley, who lived in this house with his wife and child, was visited by his two brothers, Earl and Robert, who arrived in their car from Knoxville, Tennessee. The Bradley family also had other visiting relatives. There was

only one bed in this one room house. On Sunday night the bed was occupied by two women and two children. The three Bradley brothers and their brother-in-law, Charlie Mathis, slept on pallets on the floor.

Earl Bradley and the respondent, Robert E. Bradley, planned to return to Knoxville the following day, and they arose about six o'clock Monday morning. Robert went out into the yard to inspect and check his automobile, while Earl undertook to kindle a fire in a basket grate in the open fireplace. The dimensions of the grate were given as six inches by six inches. He placed some kindling and coal in the grate, got the kerosene oil can, purportedly containing kerosene, and poured some of the fluid on one end of the kindling. A lighted match was applied and it blazed "just enough to get it started, not much". Just about this time Robert, the respondent, entered the room from the yard, leaving the door open, and approached the fireplace to obtain a light for his cigarette. Earl Bradley again lifted the can, which was the usual type with a spout, for the purpose of pouring some of the contents on the other end of the kindling, but before he could get the spout closer than twelve or fourteen inches to the grate, where the small flame had been kindled, the fumes ignited, the kerosene can exploded, and the contents scattered all over the room. In a very few minutes the house and its contents, as well as the automobile parked in the yard, were destroyed by fire. Earl Bradley was burned so badly that he died within two weeks. The respondent's left leg and left hand were so severely burned that he had to be hospitalized for several weeks, and the leg had to be amputated near the hip. The other occupants of the room escaped with relatively minor injuries.

The odor of gasoline was detected immediately following the explosion. William Bradley, Charlie Mathis, and the respondent testified that they were familiar with kerosene and gasoline, and that the odor of gasoline following the explosion pervaded the room, and that this was the first indication they had that appellant had filled the can with gasoline instead of kerosene.

The day following the explosion, William Bradley returned to appellant's store with two other men, and purchased a gallon of kerosene for testing purposes. While there he informed appellant of the accident, and appellant said, "My attendant must have undoubtedly put gasoline in your can instead, because kerosene would not blow up like that". Appellant while testifying on his own behalf, denied making this statement. Bradley and the witness, Shipman, left the store, took the gallon jug of kerosene and proceeded to make a test to see if it would explode. They stood on the side of the road and poured some of the kerosene on the ground and applied a match, with no result. Then they gathered some sticks upon which they poured kerosene and ignited them. With this fire burning, they poured kerosene in a circle around the fire, and no explosion took place.

Respondent testified that at the time of the explosion he was standing right by his brother Earl who was undertaking to kindle the fire, and when asked "What happened to you?" he replied, "It filled my shoe full of it (the liquid) and the blaze went up my pants leg, and I ran up in the field in front of Abernathy's house and to turn the blaze out of my face I turned my feet up". He further said that the liquid smelled like gasoline and repeated that his shoe was filled with it.

Appellant contends that the evidence undisputedly shows that the explosion would have occurred if the can had contained kerosene instead of gasoline, and that therefore a verdict should have been directed regardless of whether the appellant negligently filled the can with gasoline instead of kerosene. And the argument is emphasized that the testimony of the occupants of the house is incredible that they detected the odor of gasoline following the explosion under such sudden and devastating circumstances. We do not think this position is tenable. It is a matter of common knowledge that gasoline can be distinguished from kerosene through the sense of smell. Certainly no one testified to the contrary. This testimony, with the other evidence in the case, presented a jury issue.

It may reasonably be inferred from the mode and manner of the explosion, and under all of the evidence, that the can contained gasoline instead of kerosene. The evidence showed, and it is a matter of general knowledge, that gasoline is highly volatile and gives off fumes and vapors which readily ignite when in the proximity of a flame, and at a lower temperature or flash point than kerosene, and hence is more inflammable and explosive than is kerosene.

But the appellant argues that the evidence shows that both kerosene and gasoline would have produced the same result; that the act of Earl Bradley, respondent's brother, who undertook to kindle the fire, was an independent intervening cause; and that appellant's original negligence, if it existed, was not the proximate cause of respondent's injuries. It is said that under the circumstances presented, Earl was guilty of negligence in handling the can and its contents in the manner and under the conditions shown, and that this act was the act of an independent responsible human agency which intervened between the original negligence as the proximate cause; and that therefore, appellant's negligence merely brought about a condition of affairs, or a situation under which another and entirely independent and efficient agency itervened to cause the injury.

Whether the conduct of Earl Bradley (who died as the result of the explosion) in kindling the fire constituted negligence was an issue for the jury. There was sufficient evidence before the jury for it to find that the substance which caused the explosion and injury was gasoline.

We cannot say as a matter of law that the use of kerosene in starting a fire in a fireplace grate is negligence *per se*. It may or may not cause an explosion, depending upon the manner in which it is used. The use of kerosene in kindling fires is too common and too well known for us to say that a person, using reasonable care, may not employ that agency without being chargeable with negli-

gence. Nor is such use in itself contributory negligence. This principle of the law has been announced in many cases: *Standard Oil Co. v. Reagan,* 15 Ga. 571, 84 S. E. 69; *American Oil Co. v. Doyle,* 166 Va. 1, 183 S. E. 259; *Tofano v. McIntyre,* 109 W. Va. 550, 155 S. E. 653; *American Oil Co. v. Nicholas,* 156 Va. 1, 157 S. E. 754; *Annotation, Ann. Cas.* 1912A, 630.

Appellant bases his argument, that either kerosene or gasoline would have produced the same result, largely upon the testimony of two chemists to the effect that under the conditions present just prior to the explosion, the reaction of kerosene and gasoline would have been identical. These experts testified that the flash point of gasoline is much lower than that of kerosene, which is a matter of common knowledge—the flash point of kerosene being about 120 to 125 degrees Fahrenheit. They said that the temperature from an open fire, such as this product was exposed to, is between 500 and 600 degrees. On this evidence, the appellant argues that the heat from the fire place was so much in excess of the flash point of both gasoline and kerosene that the reaction would have been the same—that is that an explosion would have followed the use of either. This testimony, however, is by no means conclusive, nor is it undisputed. The experts did not state what size fire or blaze would produce a temperature of 500 or 600 degrees, nor at what distance from the fire would such temperature be generated.

The fire in this case was a feeble flame, in a cold room, on a January morning. When the match was applied to the kindling, after the liquid was poured from the kerosene can on it, it brought about a little blaze— "Just enough to get it started, not much". In fact, it was because the blaze was so weak and unpromising that Earl Bradley undertook to add more liquid to the other end of the kindling. It was for the jury to determine, in light of all the testimony, whether such a flame, under the conditions named, would generate almost instantaneously heat of the intensity of 500 or 600

degrees Fahrenheit, at a distance therefrom of 12 to 14 inches.

Appellant's witness, Leo Hughes, testified to what is generally known, that gasoline has a much higher explosive tendency than kerosene. He said that he had been in the wholesale gasoline and kerosene business for more than twenty years, and had experience and knowledge as to the explosive qualities of each. He said that kerosene is commonly used for lamps, stoves and starting fires, and that if you used gasoline to ignite a fire in a stove it would result in an explosion. He also stated that in the case of kerosene it would be possible to pour it on a small blaze and extinguish the blaze.

Another witness for the appellant testified that he had bought kerosene from the appellant for three years, which he used to start fires as well as for lamps and cooking purposes, and that in using it to start a fire he had never had an explosion or any trouble; but that he always got kerosene and not gasoline.

Furthermore, one of appellant's chemical experts testified on cross-examination:

"Q. Do you mean to tell us if I started a fire with either kerosene or gasoline that kerosene will explode just as easily as gasoline? I am talking about the grate fire we are talking about.

"A. I would not say that.

"Q. Do you mean to say that if I started a fire that way that gasoline would not explode first?

"A. I do not know.

"Q. And you are an expert?

"A. That is right."

It is perhaps significant that appellant's expert witnesses did not claim to have conducted any experiment under conditions similar to those narrated here, with either kerosene or gasoline.

Under the evidence, the issue of proximate cause was one for determination by the jury. *Huggins v. Atlantic Coast Line R. Co.*, 158 S. C. 501, 155 S. E. 839. As stated in *Locklear v. Southeastern Stages, Inc.*, 193 S. C. 309, 8 S. E. (2d) 321:

"Our decisions are all to the effect that liability exists for the natural and probable consequences of negligent acts or omissions, proximately flowing therefrom. The intervening negligence of a third person will not excuse the first wrongdoer, if such intervention ought to have been foreseen in the exercise of due care. In such case, the original negligence still remains active, and a contributing cause of the injury. The test is to be found in the probable consequences reasonably to be anticipated, and not in the number and exact character of events subsequently arising. *Johnston w. Atlantic Coast Line R. Co.*, 183 S. C. 126, 190 S. E. 459; *Crawford v. Atlantic Coast Line R. Co., supra* (179 S. C. 264, 184 S. E. 569); *Tobias w. Carolina Light & Power Co.*, 190 S. C. 181, 2 S. E. (2d) 686."

A consideration of all the evidence on the issue of proximate cause does not admit of only one reasonable inference, and therefore the trial judge committed no error in refusing to direct a verdict.

It is next claimed that the trial court committed reversible error in the admission of certain testimony over objection, from Shipman, a witness for the respondent. This witness lived about 100 yards from the home of William Bradley, and had for twenty years been an automobile mechanic. He was familiar with the reaction of gasoline and kerosene and their explosive qualities under certain conditions. It is said that the circuit judge did not confine Shipman to testimony respecting the reaction of kerosene and gasoline in an internal combustion motor, but allowed him to testify as to what these products would do under other conditions——conditions as to which the witness laid no claim to qualification as an expert. The first objec-

tion made to evidence given by him was interposed when in reply to a question on direct examination with reference to what experience he had in handling gasoline, he stated that a gasoline motor will not burn kerosene unless it is primed (with gasoline). At another point, in response to a question with reference to the explosiveness of gasoline in motors he replied, "All the experience I have had is that gasoline is more explosive".

It is difficult to see how this testimony could have been prejudicial to appellant. All of the witnesses without exception testified that it is a matter of general knowledge that gasoline is far more explosive than kerosene. Appellant's witness, Hughes, and the appellant too, testified that gasoline is quicker to ignite than kerosene, and is an explosive of much greater intensity. At another point, this witness was asked what would gasoline do if it was set close to a fire. He replied, "Explode". Objection was made, and prejudicial error charged because the witness, Shipman, had not qualified as an expert. Even if it be conceded, and it is not, that this testimony was objectionable, it could not have resulted in prejudicial error. The witness merely testified to a matter of general knowledge. Furthermore, similar testimony throughout the trial was given by various witnesses. Appellant's witness Hughes testified that if you poured gasoline on a small blaze, it would explode; that gasoline is quicker to ignite than kerosene. And both of appellant's expert witnesses testified to substantially the same thing.

It may be noted here that more than once during the course of the trial, appellant attempted to establish that the explosion in the home of William Bradley was caused by gasoline when it was mistakenly used for kerosene. The effort was made to show on cross-examination of respondent and his witnesses that five gallons of gasoline had been obtained by William Bradley from the appellant to be used by his brothers, Earl and Robert, in their car for their return trip to Knoxville Monday morning, January 29th. In view of this course of cross-examination, it is not reason-

ably apparent how the appellant could have been prejudiced by the testimony of Shipman to the effect that if gasoline is exposed to a fire it will explode.

Finally, it is urged that it was error to allow Shipman to testify with reference to a so-called experiment made by him and William Bradley on the side of the road with a gallon jug of kerosene.

In our opinion, appellant is in no position to advance any objection to this testimony. The first time any reference is made to this experiment, as shown by the record, was when the witness, William T. Bradley, was on the stand under cross-examination by appellant's counsel. Counsel went into the matter in detail. Appellant also examined his two expert witnesses on the same subject.

It is true that appellant's cross-examination hereinabove referred to was made subject to objection, but no motion was made to strike it out on the ground of its alleged objectionable character.

In the light of the whole record, we find no prejudicial error.

Judgment affirmed.

BAKER, CJ., STUKES, TAYLOR and OXNER, JJ., concur.