## Still v. Secretary of the Commonwealth

*Daniels, Harter & Swope,* for plaintiff.

*T. McKeen Chidsey,* Attorney General, and *Samuel M. Jackson,* Deputy Attorney General, for Commonwealth.

RICHARDS, J., August 9, 1950.—On July 12, 1950, this court directed the Secretary of the Commonwealth to receive and file the nomination papers of a political body known as "G.I.'s Against Communism", subject to all legal requirements as to their adequacy and form. This order was complied with. However, upon examination of the papers it was discovered that those of George Angelo as candidate for the United States Con-

gress failed to designate the congressional district in which he proposed to be a candidate. His nomination papers were accordingly rejected. No complaint has been made of this determination. In addition thereto, the secretary rejected the nomination papers of all other candidates of the political body for the reason that the appellation "G.I.'s Against Communism" contains more than three words and thus violates section 952 (a) of the Election Code of June 3, 1937, P. L. 1333; 25 PS §2912.

Thereafter, a complaint in mandamus was filed in this court on July 28, 1950, praying that the secretary be directed to file the nomination papers of "G.I.'s Against Communism" for the offices of United States Senator, Governor, Lieutenant Governor and Secretary of Internal Affairs of the Commonwealth of Pennsylvania, and to certify said candidates to the county boards of election for inclusion on the ballot for the ensuing election. Service of the complaint was accepted by the secretary. On August 3, 1950, notice was accepted on behalf of the secretary of the intended presentation to the court on August 4, 1950, of a motion for summary judgment. The court sat on the date indicated, the motion for summary judgment under Pa. R. C. P. 1098 was presented and filed, and counsel for each party briefly presented his views.

The first thing we are obliged to decide is whether or not we may take judicial notice of the meaning of "G.I.". We are of the opinion that we may. The meaning of the expression is generally understood by reasonably informed persons. It is a term in constant, daily use by commentators, newspapers, periodicals, and the public generally. Its meaning is reflected in modern dictionaries. In Siemens Estate, 346 Pa. 610, 613, it is stated that, " ' " Judicial notice will be taken of such ordinary abbreviations as by common use may be

regarded as universally understood" ' ". Bouvier's Law Dictionary, under the heading of "Judicial Notice", mentions many facts of which the courts may take judicial notice, including political and historical facts. Having so concluded, we shall now consider the expression.

GI is derived from general issue or government issue. As thus used it is an abbreviation or contraction of two words and applies to anything provided for the soldier. As a slang expression it is a noun denominating an enlisted man or former enlisted man of the United States Army, or of any of the United States armed forces, or the rank and file; see American Everyday Dictionary, American Collegiate Dictionary and Merriam-Webster Pocket Dictionary. Referring to a person as a GI is generally equivalent to referring to him as a common soldier as distinguished from a commissioned officer. As thus used it is a name. The "G" alone would not have this significance; neither would the "I" alone. It is the combination which connotes the soldier.

GI may also be considered as a nickname, a name given instead of one belonging to a person; see Webster's Dictionary. In this connection it is interesting to note that the index to U. S. C., page 720, states: "G.I. Bill of Rights—see Servicemen's Readjustment Act of 1944". As here used it has a connotation broader than rank and file, and would include servicemen generally. Even when so construed it is a noun.

It is also possible to denominate the expression as a figure of speech, particularly a trope. Webster's Dictionary defines a trope as "The use of a word or expression in a different sense from that which properly belongs to it". Thus, if GI be an abbreviation of government issue, its use to designate a type of soldier is a different application of the term. When used in the latter sense it is used as a noun or name, and is thus

one word having as its concept "soldier". It is roughly akin to "dough-boy" as used in World War I.

We think no person would construe the name of this political body to be "General Issue Against Communism" or "Government Issue Against Communism". Such a construction would be absurd. But if the name be construed in the manner above indicated, it has meaning and is intelligible.

The presence or absence of periods after the letters "G" and "I" is also without significance since the expression is used both ways; see Merriam-Webster Pocket Dictionary, 1949. Likewise the apostrophe in the name "G.I.'s" is used to express the plural in accordance with recognized practice.

In passing, we might speculate that the reason for limiting the name of a political body to three words is to conserve space on the ballot or on a voting machine. If this be so, there will be no difficulty in the present case because the expression is more brief than others which might be lawfully used.

We hold, therefore, that the expression "G.I.'s" is but one word, a noun, the plural of GI, and that the entire name, "G.I.'s Against Communism" contains but three words. It does not, therefore, violate the provisions of the Election Code above referred to.

From all of the foregoing, we think that the right to the relief prayed for in the complaint is clear and that the motion for summary judgment must be granted.

### Decree

And now, to wit, August 9, 1950, the Secretary of the Commonwealth, having rejected the nomination papers of the candidates for the offices of United States Senator, Governor, Lieutenant Governor and Secretary of the Commonwealth, of the political body known and named "G.I.'s Against Communism", solely on the ground that the name of this political body contains

more than three words, it is hereby ordered and decreed, for the reasons aforesaid, that he shall receive and file the papers, and shall certify the names of the candidates of the party to the respective county boards of election, in accordance with law, for inclusion on the ballot in the ensuing election.