C. W. HOPKINS, ADMINISTRATOR OF THE ESTATE OF DON HOPKINS, DECEASED, v. A. F. COMER, TRADING AS A. F. COMER TRANSPORT SERVICE,
and
C. W. HOPKINS, ADMINISTRATOR OF THE ESTATE OF DUANE HOPKINS, DECEASED, v. A. F. COMER, TRADING AS A. F. COMER TRANSPORT SERVICE,
and
C. W. HOPKINS, ADMINISTRATOR OF THE ESTATE OF DEXTER HOPKINS, DECEASED, v. A. F. COMER, TRADING AS A. F. COMER TRANSPORT SERVICE.

(Filed 28 April, 1954.)

**1. Evidence § 51—**

A witness to be competent as an expert must be shown to be skilled or experienced in the business, profession or science to which the subject in question relates.

**2. Same—**

A physician, though an expert in his particular field, is not competent to testify as an expert as to the cause of an explosion of a gasoline tank truck, even though he studied chemistry in college.

**3. Evidence § 48—**

Ordinarily, a nonexpert is not competent to give his opinion on facts which are not within his personal knowledge, since the jury may be aided in forming an opinion from the facts only when additional light can be thrown on the question by a person of superior learning, knowledge or skill in the particular subject.

**4. Trial § 22b—**

On motion of nonsuit, defendant's evidence will be considered only in so far as it is favorable to plaintiff, except when not in conflict with plaintiff's evidence, it may be used to explain or make clear that of plaintiff.

**5. Evidence § 5—**

It is a matter of common knowledge that the firing of a cap pistol, or the explosion of a cap by such pistol, emits a spark, and that a spark will ignite gasoline fumes or vapors.

**6. Same—**

Judicial notice is not limited by the actual knowledge of any individual judge, but as to matters within the common knowledge, judges may refresh their memories, from standard works of reference.

**7. Trial § 23a—**

Cases cannot be submitted to a jury on speculations, guesses or conjectures.

**8. Negligence § 17—**

Negligence is not presumed from the mere fact of a fatal accident.

**9. Negligence § 3½—**

The doctrine of *res ipsa loquitur* does not apply to the explosion of the parked tank truck when more than one inference can be drawn from the evidence as to the cause of the explosion and the existence of negligent default is not the more reasonable probability, or when the cause of the accident is left in conjecture, or when the instrumentality is not under the exclusive control of the defendant.

**10. Negligence § 19b (1)—Evidence held insufficient to show that fatal injury from explosion of tank truck was proximate result of defendant's negligence.**

Plaintiff's intestates were killed by the explosion of a parked tank truck from which the gasoline had been drained. Plaintiff's evidence disclosed that his intestates, two small boys, had cap pistols and were playing in the yard where the truck was parked shortly before the accident. Plaintiff also introduced evidence that safety vents or valves were maintained in the domed cap of the truck for the automatic release of air from the tank when the pressure became too high and evidence of defendant's failure to inspect such devices. *Held:* The doctrine of *res ipsa loquitur* being inapplicable, the evidence is insufficient to be submitted to the jury on the question of whether any negligence of defendant in the maintenance and operation of the tank truck and its safety devices was a proximate cause of the accident.

APPEAL by plaintiff from *Paul, Special Judge,* September Term 1953 of NASH.

Three civil actions, by consent consolidated for trial, to recover damages for the deaths of three boys, aged 3, 7 and 13 years, the children of Oliver Hopkins, caused by the explosion of the tank of an automobile tank truck used in hauling petroleum products.

The plaintiff introduced evidence tending to show the following facts. The defendant was engaged in transporting for hire petroleum products

by automobile tank cars and trucks, with a plant in Rocky Mount. Oliver Hopkins had been a truck driver for the defendant hauling petroleum products about 3½ years prior to 2 December 1951; he had driven the tank truck of the defendant that exploded over a year, and had "put way over a hundred thousand miles on it." Hopkins with his wife and children lived in Nash County 28 miles from Rocky Mount. On Saturday 1 December 1951 Hopkins drove this truck with a load of gasoline to Nashville, unloaded the gas there—the tank was drained—and went to Rocky Mount, where the truck was washed, greased and gas was put in the truck for the operation of its engine—gas was not put in the tank for transportation and delivery. Hopkins got the truck about 1:00 p.m., and drove it to his home, parking it in his yard adjacent to his house. During the entire time Hopkins worked for the defendant, the defendant permitted him to drive the tank car to his home at night; on week-ends when the tank truck was not in use he frequently kept it there. This was mutually convenient for him and the defendant, because Hopkins would not have to drive 28 miles to Rocky Mount to get it. The defendant in paragraph seven in his answer in each of the three actions says: "No issue is raised as to the authority of Hopkins to have the tank in his yard on December 1st and December 2nd 1951."

Hopkins had never been given any instructions by the defendant with regard to safety valves, vents or anything else connected with the truck, except to be careful in driving it; nor had he been required to inspect, or have inspected the dome cap, vents or valves. During the time he drove this tank car, it had not been inspected to his knowledge. For the last 3 or 4 weeks Hopkins drove this truck, he noticed after unloading the gas, when he went to refill it by unlocking the dome cap and moving it around to raise the lid, the lid would jump up almost high enough to stand straight up, blown up from pressure inside. He knew nothing about the amount of pressure that would cause the fusible plugs in the cap to operate.

Late Sunday afternoon on 2 December 1951 Oliver Hopkins' three small boys, Dexter aged 3, Duane aged 7, Don aged 13, and their first cousin, a small boy named Harold Whitley, just prior to the explosion, were playing in the yard, but not near the tank truck. About 5:15 p. m. the same afternoon the tank truck suddenly exploded, tearing out the front and rear walls of the tank, but not disturbing at all the dome cap and safety devices installed thereon for the purpose of eliminating such an explosion. The three Hopkins boys and the Whitley boy were killed by the explosion. The bodies of Duane and Don Hopkins were found about 30 or 40 feet from the tank truck; the body of Dexter Hopkins was torn in two—half of his body was found about 100 yards from the tank

truck, and the other half about 200 yards from it. The tank truck was parked, just before it exploded, in the Hopkins yard 478 feet from the center of the highway. There were two small Pecan trees between the tank truck and the highway.

On cross-examination Oliver Hopkins testified he knew his son Don and Harold Whitley had cap pistols before the explosion; after the explosion someone found cap pistols, or some parts of them, out across the field; that afternoon his wife went to an airport just across the road, and found a cap pistol.

Plaintiff introduced in evidence from paragraph one of the further answer in the Don Hopkins Case several sentences which are summarized as follows: The dome cap on top of the tank, used to pour gasoline in the tank, has a hinged lid which can be closed, and fastened down. On top of the lid and leading through it were two fusible plugs, designed to meet requirements of the Interstate Commerce Commission and to melt in case of heat sufficiently high to produce danger of explosion. In the center of the dome cap there was a vent with valve to permit air or gas to go into or pass out of the tank. When gasoline was withdrawn, air would pass through the vent into the tank to replace the withdrawn gasoline. If gasoline in the tank expanded, as a result of heat, air would pass through the vent outward. Normal pressure within the tank would be released, when the pressure exceeded one pound to the square inch. If gases should be generated faster than the small vent could relieve them, as in case of fire, then the central plunger in the vent would open when the pressure reached six pounds per square inch, providing a larger opening for relief of pressure. In the midst of the part of the answer offered in evidence appears this sentence: "These plugs met the requirements of the Interstate Commerce Commission." The next sentence in the answer reading: "They played no part in the explosion," the plaintiff did not introduce in evidence.

The defendant's evidence tended to show these facts. Just before dark Earl M. Stevens passed by Oliver Hopkins' home in an automobile on the highway, saw the tank truck parked in the yard; "there were two children on top of the tank and one so small he couldn't quite get on the back, trying to climb on the back end of the truck." The larger boy had the dome lid on the tank truck open, and was kneeling down at the dome lid. The other boy was walking up to the dome lid. The defendant's name was on the door of the tank truck in large letters. Earl M. Stevens heard at Bailey of the explosion that afternoon, and went to the scene.

Van Matthews, Coroner of Nash County, arrived at the scene of the explosion between 7:00 and 8:00 p. m. that night. From his inspection with a flashlight he saw inside the exploded tank smudge—"it was more

or less oil soot—just a skim." At the scene of the explosion he found a cap within 5 feet of the tank, that had been fired from a cap pistol or some other instrument. He found a roll of caps in the pocket of the dead body of Duane Hopkins.

The next day an employee of the defendant looked at the exploded tank. The inside was dry and smutty. The tank truck or tank trailer that exploded was of approved type in general use in the oil transportation business. The rising of the lid, when the locking mechanism of the dome cap is released is normal—how far it rises depends on temperature, whether hot or cold.

Dr. Frederick Phillips Pike, who was held by the trial court to be an expert in chemical engineering, gave testimony for the defendant tending to show the following. In response to hypothetical questions describing the exploded tank as shown by the evidence he said it would be to him strong evidence of a detonation, which is an extremely violent explosion, separate and distinct from the small bursting of a tank of low pressure. A detonation must be caused by the oxidation of air, and cannot be caused by decomposition of gasoline alone; that any hot spark or any part of a cap explosion can cause a detonation. That in his opinion, if the jury found the tank exploded some 30 hours after it was drained blowing out the two ends of the tank with such violence that a child standing nearby was thrown a distance of 180 yards, such an explosion could not have been caused otherwise than by fire being brought in contact with the fumes in the tank. Gas alone itself will not detonate; there must always be oxygen. It is well known that fire will strike off gasoline and oxygen brought together. There is a tremendous difference between gasoline vapors by themselves and gasoline—air mixtures. He has seen gasoline by itself under pressure of 3000 pounds per square inch and 900 degrees F., which will make pipes containing it glow red at night, which did not detonate.

At the close of all the evidence the defendant renewed his motion for judgment of nonsuit in each case, which the court allowed.

From judgment signed in each case in accord therewith the plaintiff appealed assigning error.

*Cooley & May and Arthur C. Bernard for Plaintiff, Appellant.*
*Battle, Winslow & Merrell for Defendant, Appellee.*

PARKER, J. The plaintiff assigns as error, based on his exceptions Nos. 37 and 38, the trial court's sustaining the defendant's objections to two questions asked Dr. John Chamblee. Dr. Chamblee is health officer of Nash County; a doctor of medicine, licensed to practice his profession,

who had studied chemistry two years at college. Dr. Chamblee was offered by the plaintiff as a layman, who had studied chemistry, and not as an expert; and as a man who was familiar with the type of cargo tank truck such as exploded in the instant case. Dr. Chamblee was asked this hypothetical question in substance: assuming that the jury should find that the tank truck was unloaded of its gasoline around noon on Saturday, the tank drained, all the known openings closed and fastened; that it was taken to Rocky Mount, was washed and greased, and thereafter driven to the Hopkins' yard where it remained about 30 hours; that it was not exposed to any outside fire producing agency, and around 5:15 p. m. on the next day violently exploded, did he have an opinion satisfactory to himself as to what caused the explosion? The court sustained defendant's objection to the question, which is the basis of plaintiff's exception No. 37. Dr. Chamblee, if permitted to answer, would have replied: in his opinion the explosion would be caused from spontaneous combustion on the inside of the tank. Dr. Chamblee was then asked, considering his familiarity with this type tank, if he had an opinion as to what would cause an explosion of an empty tank recently emptied of gasoline, eliminating any external causes. If permitted to answer, over defendant's objection, he would have given the same answer he did to the hypothetical question. This is plaintiff's exception No. 38.

In both of these questions Dr. Chamblee was asked to give his opinion upon facts not within his personal knowledge—in other words to give expert testimony. These questions present this question: was Dr. Chamblee better qualified than the jury to form an opinion from these facts? This Court has said in *Patrick v. Treadwell,* 222 N.C. 1, 21 S.E. 2d 818: "it would seem that the proper test is whether additional light can be thrown on the question under investigation by a person of superior learning, knowledge or skill *in the particular subject,* one whose opinion as to the inferences to be drawn from the facts observed or assumed is deemed of assistance to the jury under the circumstances." (Italics ours).

A witness to be competent as an expert must be shown to be skilled or experienced in the business, profession or science to which the subject relates, though there is no exact requirement as to the mode by which such knowledge, skill or experience has been acquired. *S. v. Smith,* 221 N.C. 278, 20 S.E. 2d 313; 20 Am. Jur., Evidence, Sec. 784; Stansbury N. C. Evidence, Sec. 133; Wigmore on Evidence, Third Ed., Sec. 1923.

Dr. Chamblee by education, training and experience is well qualified as a physician to give an opinion which would be likely to aid a jury to a correct conclusion as to the diseases and ills constantly threatening and affecting humanity. However, it does not appear that Dr. Chamblee is qualified by education, training or experience to express an opinion as an

expert witness as to the cause of the explosion in this case. The rulings of the trial court as to this assignment of error were correct.

The plaintiff assigns as error the refusal of the trial court, over defendant's objection, to hold that Herman Baker had qualified as an expert witness for plaintiff, and the refusal of the trial court to permit him, over defendant's objection, to say where he kept his cargo tank trucks, how he loaded and unloaded them, and to express an opinion upon assumed facts. This assignment of error is based on his exceptions Nos. 39-43, both inclusive. Herman Baker has been an oil distributor 32 years, and is familiar with the equipment he uses. The record is bare of any evidence that Herman Baker by his business, knowledge, trade or experience is qualified to give an opinion as an expert witness as to the explosion in this case. The plaintiff contends Herman Baker's evidence was excluded under an erroneous view of the law, citing *Pridgen v. Gibson,* 194 N.C. 289, 139 S.E. 443. It is a far cry from the facts in that case and in this. In the Pridgen Case it was held error for the trial court to hold as a matter of law that a general practitioner of medicine could not qualify as an expert to give his opinion in a personal injury case for alleged malpractice, though he had not specialized as an oculist. This exceptive assignment of error is overruled.

This brings us to a consideration of plaintiff's assignment of error as to the trial court allowing defendant's motions for judgments of nonsuit in all three cases, made at the close of all the evidence. We do not consider the defendant's evidence on such a motion, unless favorable to the plaintiff, except when not in conflict with plaintiff's evidence, it may be used to explain, or make clear the evidence of the plaintiff. *Harrison v. R. R.,* 194 N.C. 656, 140 S.E. 598; *Rice v. Lumberton,* 235 N.C. 227, 69 S.E. 2d 543; *Polansky v. Ins. Asso.,* 238 N.C. 427, 78 S.E. 2d 213.

"Everybody knows that a lighted match will ignite kerosene or fuel oil." *Jennings v. Oil Co.,* 206 N.C. 261, 173 S.E. 582. It is common knowledge that gasoline is highly inflammable. *American Oil Co. v. Nicholas,* 156 Va. 1, 157 S.E. 754. "It is a matter of general knowledge that gasoline is highly volatile, and gives off fumes and vapors which readily ignite when in the proximity of a flame." *Bradley v. Fowler,* 210 S.C. 231, 42 S.E. 2d 234. Webster's New Collegiate Dictionary (1949) gives as one definition of the word *cap:* "a percussion cap; also a small piece of paper containing an explosive charge, used in toy pistols." It is common knowledge that the firing of a cap pistol, or the explosion of a cap by such pistol, emits a spark, and that a spark will ignite gasoline or gasoline fumes or vapors.

Judicial notice is not limited by the actual knowledge of any individual judge or court. Judges may inform themselves, or refresh their memo-

ries, from standard works of reference, though it is settled law that the mere appearance of facts therein does not entitle them to judicial notice, unless they are such as to be part of common knowledge.  20 Am. Jur., Evidence, sections 21 and 22; *Siemen's Estate,* 346 Pa. 610, 31 A. 2d 280, 153 A.L.R. 483, writ of *certiorari* denied in 320 U.S. 758, 88 L. Ed. 452.

The plaintiff contends in his brief : (a) there was no positive and direct evidence which indicated any definite explanation for the explosion, save what could be inferred from the evidence that the defendant was negligent, and failed to exercise due care in the operation and maintenance of the tank truck; (b) that the front and back ends of the tank truck were ripped out, but the dome cap was not dislodged, but was closed and securely fastened, and the evidence discloses that safety devices in the dome cap were defective in that the fusible plugs did not melt or blow out as it was intended they should to prevent explosion; (c) it is common knowledge that tank trucks do not ordinarily explode when properly inspected, supervised and operated, whether loaded or not, that this tank truck was in the sole control of defendant, "and, therefore, the evidence in this case discloses a typical background for the doctrine of *res ipsa loquitur"*: the plaintiff cites in his brief *Howard v. Texas Co.,* 205 N.C. 20, 169 S.E. 832.

The plaintiff's uncontradicted evidence shows that the Hopkins boys, who were killed, and Harold Whitley shortly before the explosion were playing in the yard where the tank truck was, though not near it, when Oliver Hopkins went in his house.  He was in the house at the time of the explosion.  Don Hopkins and Harold Whitley had cap pistols before the explosion; after the explosion cap pistols, or some parts of them, were found out across the field; that afternoon his wife went to an airport just across the road, and found a cap pistol.

Without considering defendant's evidence that the Coroner of Nash County found a cap that had been fired from a cap pistol or some other instrument within 5 feet of the tank; that a roll of caps was in the pocket of the dead body of Duane Hopkins, it is our opinion that the evidence offered by plaintiff is not sufficient, when most liberally construed, and giving to him the benefit of every reasonable inference to be drawn therefrom, to carry the cases to the jury that the explosion was caused by any negligence of the defendant in the operation and maintenance of the tank truck, or that the safety devices on the tank truck were defective, and that the allowing of the motions for judgments of nonsuit in each case was proper, unless the doctrine of *res ipsa loquitur* applies.  It is to be noted that plaintiff states in his brief there was no direct and positive proof which indicated any explanation for the explosion, except such as could be inferred from the evidence.  There is an utter want of direct

HOPKINS v. COMER.

proof that any safety devices on the tank truck were defective. Cases cannot be submitted to a jury on speculations, guesses or conjectures. Negligence is not presumed from the mere fact someone is killed. *Mills v. Moore,* 219 N.C. 25, 12 S.E. 2d 661.

Upon all the facts disclosed by the evidence "more than one inference can be drawn from the evidence as to the cause" of the explosion, and "the existence of negligent default is not the more reasonable probability, and the proof of the occurrence, without more, leaves the matter resting only in conjecture." Therefore the doctrine of *res ipsa loquitur* does not apply, because the cases fall within the exceptions pointed out in *Springs v. Doll,* 197 N.C. 240, 148 S.E. 251; *Jennings v. Oil Co., supra; Boone v. Matheny,* 224 N.C. 250, p. 253, 29 S.E. 2d 687 (see also *Lamb v. Boyles,* 192 N.C. 542, 135 S.E. 464; *Dail v. Taylor,* 151 N.C. 284, 66 S.E. 135) : rather than within the typical explosion cases, such as *Howard v. Texas Co., supra.*

Considering plaintiff's evidence, and defendant's evidence, which is not in conflict with it, but tends to explain and make clear plaintiff's evidence, it would seem that the tank truck was not under the exclusive control of the defendant, and the doctrine of *res ipsa loquitur* is not applicable, because the cases fall within another exception to the rule as set forth in *Springs v. Doll, supra;* see *Saunders v. R. R.,* 185 N.C. 289, 117 S.E. 4; *Smith v. Oil Co.,* 239 N.C. 360, 79 S.E. 2d 880. This would seem to be true, without considering at all defendant's evidence tending to show that two children were on top of the tank of the truck, and the larger boy had the dome lid on the tank truck open, and was kneeling down at it.

The remaining assignment of error discussed in plaintiff's brief relates to the exclusion of evidence as to funeral expenses. From what we have said above the exclusion of this evidence was harmless.

The untimely deaths of these four, fine young boys present a case of stark, heart breaking tragedy. We have the utmost sympathy for the bereaved parents, but it is our duty "to keep the law in calmness made."

The judgments entered in the Superior Court are

Affirmed.