WILLIAM HENRY JOHNSON v. GUY FRYE & SONS, INC., HICKORY, NORTH CAROLINA, A CORPORATION.

(Filed 2 November, 1960.)

1. Master and Servant § 18—

Where the main contractor undertakes to provide a hoist for the use of a subcontractor in the performance of the work under the subcontract, the main contractor is under duty to exercise the care of a reasonably prudent person to provide the employees of the subcontractor with a hoist reasonably suitable for the intended uses when properly operated.

2. **Same— Evidence held insufficient to show that main contractor failed to provide employees of subcontractor with a hoist reasonably suitable for intended uses when properly operated.**

The evidence tended to show that employees of the subcontractor came to work before those of the main contractor, and that an employee of the subcontractor, in the absence of the employee of the main contractor in charge of the hoist, ran the hoist, with a loaded wheelbarrow thereon, to the third floor. The evidence further tended to show that an employee of the subcontractor, in attempting to roll a loaded wheelbarrow off of the hoist at the third floor, attempted to "bump" the wheelbarrow off because the hoist had not been elevated high enough to be even with the floor, that this resulted in vibration causing the "dog," which locked the elevator in position, to fly out and the elevator to fall, there being no one at the engine to apply the brake, resulting in injury to the employee on the hoist. There was no evidence of any defect in the elevator mechanism or its locking or braking devices. *Held:* The evidence is insufficient to be submitted to the jury on the issue of the main contractor's negligence in failing to exercise due care to provide a hoist reasonably suitable for the intended uses when properly operated.

APPEAL by plaintiff from *Campbell, J.,* May 2, 1960 Regular "B" Civil Term, of MECKLENBURG.

Defendant had a contract for the alteration of the Harper Building at State Hospital in Morganton. It sublet to Atlantic Marble and Tile Company (hereafter called Tile Co.) that part of the contract which called for the installation of tile. Plaintiff, an employee of Tile Co., was injured in the fall of a hoist installed by defendant to facilitate the modernization of the building.

This action was begun to recover compensation for the injuries plaintiff sustained when the hoist fell. He alleges it fell because (a) negligently constructed of materials of insufficient strength to support the weight for which it might reasonably be expected to be used, (b) constructed in a negligent manner without safety device or adequate brakes. He also alleges the defects in the hoist could have been discovered by reasonable inspection.

Defendant denied those allegations of the complaint on which plaintiff based his claim for damages. At the conclusion of plaintiff's evidence, defendant's motion for nonsuit was allowed. Plaintiff appealed.

*Myles Haynes, Henry L. Strickland, Kennedy, Covington, Lobdell & Hickman for plaintiff, appellant.*

*Helms, Mulliss, McMillan & Johnston, James B. McMillan, and Larry J. Dagenhart for defendant, appellee.*

RODMAN, J. Plaintiff's evidence is sufficient to permit a jury to

find these facts: Defendant was, by contract with Tile Co., obligated to provide "hoist facilities" for elevating materials, the hoist to be used only in elevating materials, not persons. It was to be operated by regular employees of defendant. Tile Co.'s employees were not to operate it.

The hoist consisted of a wooden platform closed on two sides with the other two sides open. The building being repaired was three stories. A wire rope was fastened to the hoist. This rope led to a pulley above the building and then down to a drum around which the rope was wound. By use of a clutch a gas engine engaged the drum to elevate the hoist. A foot brake was used to stop the hoist or to lower it in an orderly manner. When stopped at the desired height, the hoist could be held in that position by means of a "dog" which fitted into a slot about 1 inch by ¾ inch. The dog, when properly seated, locked and held the hoist. In addition to the braking system, the hoist had a safety device to prevent too rapid a descent.

The employees of Tile Co. went to work at 7:00 a.m., the employees of defendant, at 8:00 a.m. Plaintiff, a helper to a tile setter, was responsible for keeping the tile setter supplied with materials. On 1 August, the date plaintiff was injured, tile was to be set on the third floor of the building. Between 7 and 8 a.m. an employee of Tile Co. started the gas engine, running the hoist up and down two or three times to test it. He then loaded a wheelbarrow of "mud" (a mixture of sand and cement used as a bonding agent to set the tile) on the hoist. The handles of the wheelbarrow were turned away from the building. This employee then ran the hoist to or nearly to the third floor. He set the dog, locking the hoist in position. A few minutes before 8:00 a.m., plaintiff undertook to move the wheelbarrow of mud from the hoist. Because the handles of the wheelbarrow were away from rather than next to the building, it became necessary for him to go on the hoist to push the mud off. The floor of the hoist was slightly below the floor of the building. Plaintiff could not push the wheelbarrow off. He sought to get it off by bumping. This set the hoist vibrating. The dog flew out of the slot which locked the elevator in position. There was no one attending the hoist to apply the foot brake. The safety device designed to prevent excessive speed operated, checking the speed of the elevator, causing plaintiff to be thrown to the ground at or near the second floor. He sustained serious injuries.

John Craig, foreman for Tile Co., examined as a witness for plaintiff, testified the safety mechanism was working properly. "The ele-

vator was greased regularly and checked regularly, I would say twice a week, by a Frye Construction Company employee. One of Mr. Frye's men greased it, the operator of the elevator. His operator checked it and I have checked it myself. . .At the moment it fell there was nobody attending the brakes or anything, the control of it. The motor was running. . .I don't know how to explain what happened to the end of the cable that was fastened to the drum, except that when that elevator came down the drum brake was not on and there was nobody to put the brakes on and the drum was loose and when it went to the end of the cable it revolved back and sheared the bolt out. This occurred right after the platform hit the ground. . .There were no defects about the brakes or clutch or the safety governor that I know of. . .At the time the elevator fell there was not any employee of the Guy Frye & Sons close to the elevator or doing anything about the elevator. The last person who worked the controls on it was an employee of Atlantic Marble & Tile Company who had run it up to the third floor with this wheelbarrow on it."

Walter Harrison, plaintiff's witness, testified: ". . .the whole entire elevator was shaking and he tried to push the wheelbarrow off and I heard the noise. I mean the wheelbarrow on, yes, and it was shaking and vibrating and I stopped and heard the noise and I seen it leave and jumped back. I seen the locking device, the lever that fits in the cog. It flew backward from it. When it flew back, she tumbled down, she came tumbling and hit the second floor and it seems like it hung or something and then it started running down again and that is when he fell off when he was leaving the second floor. . .I saw Henry Johnson get on the platform to move this wheelbarrow of cement. Regarding how soon after he got on there the elevator fell, I would say a minute and a half or something like that. During that time, he was trying to push the wheelbarrow off and the elevator was moving back and forth. Regarding what was moving back and forward, the whole entire elevator, the platform and the whole elevator entirely, shaking back and forward, the platform and the whole entire elevator, cables."

The testimony furnished plaintiff a sound foundation for the assertion that defendant's contract to provide a hoist for use by the subcontractor imposed on defendant the duty of exercising the care of a reasonably prudent person to provide the employees of the subcontractor with a hoist reasonably suitable for intended uses when properly operated. *Bemont v. Isenhour*, 249 N.C. 106, 105 S.E. 2d 431; *Cathy v. Construction Co.*, 218 N.C. 525, 11 S.E. 2d 571.

.

Defendant does not controvert this assertion. It says the .nonsuit was allowed not because of the absence of a duty but for lack. of evidence to support the asserted breach of duty.

Considering all of the evidence, as we do, in the most.favorable aspect for plaintiff, we fail to find any which would justify a finding that defendant failed to perform its duty in any of the particulars alleged.

· The doctrine of *res ipsa loquitur* is not here applicable.· *Lea v. Light·Co.*, 246 N.C. 287, 98 S.E. 2d 9; *Johnson v. Meyer's Co.*, 246 N.C. 310, 98 S.E. 2d 315; *Hopkins v. Comer*, 240 N.C. 143,·81 S.E. 2d 368; *Springs v. Doll*, 197 N.C. 240, 148 S.E. 251.·

Affirmed.