## Garbrick Estate

600

*W. Joseph Harrison, III*, for exceptants.
*Leonard Spear*, contra.

BRUNO, *J.*, November 21, 1974—The issue presently before this court for decision is whether the auditing judge, Shoyer, *J.*, by his adjudication dated January 24, 1974, properly exercised his discretion in applying the equitable doctrine of cy-pres to the facts of the instant case. In that adjudication he decided that the Princeton Theological Seminary should be the income beneficiary of the Garbrick Trust by virtue of its being best able to apply said funds in accordance with the Garbricks' general charitable intention. The prime subsidiary legal questions relating to that decision are (1) whether the trust assets were in fact assets of the St. Paul United Presbyterian Church which thereby vested in the immediate judicatory, the Presbytery of Philadelphia, upon St. Paul's dissolution, and (2) whether the auditing judge erred in going beyond the four corners of the will to determine the testators' intentions.

The full ramifications of these questions can only be understood by reference to the history of the entire case.

Della M. Garbrick died August 18, 1953, leaving a will and codicil thereto, both of which were jointly executed by decedent and her husband, who had predeceased his wife. By Item Ten of the will, the

testators gave their entire residuary estate in trust as follows:

"Ten. *Board of Christian Education of the Presbytery of Philadelphia*

"We give and devise all the rest and residue of our estate and the above trusts as they revert to our estate (section Seven, Eight and Nine) known as the Clarence A. Garbrick and Della M. Garbrick Estate the interest of the personal and real as follows:

"(a) The income to be used to further Christian Education in St. Paul Church 50th and Baltimore Avenue under the supervision of the Session of St. Paul Presbyterian Church.

"(b) To aid boys and girls of St. Paul Presbyterian Church who desire to study for the Ministry of the Gospel.

"(c) To aid boys and girls of the Presbytery of Philadelphia who desire to study for the Ministry of the Gospel. The latter to be administered by the Board of Christian Education of the Presbyterian Church of Phila., U.S.A., located in the Witherspoon Building.

"(d) We direct that every student who desires aid from this estate shall before receiving such assistance be required to declare in writing his belief in the following declaration of faith:

"(1) I believe in the Bible, composed of the Old and New Testament, is inspired of God and is of supreme and final authority in faith and life.

"(2) I believe in the supernatural as the vital element in the revelation and operation of the Christian Faith.

"(3) I believe in one God, eternally existing in three persons, Father, Son and Holy Spirit.

"(4) I believe that Jesus Christ was begotten of the Holy Spirit and born of the Virgin Mary, that He is true God and true Man, the only and sufficient mediator between God and Man.

"(5) I believe in the personality of the Holy Spirit, that his ministry is to reveal Christ to man in the regeneration and sanctification of their souls:

"(6) I believe that Man was created in the image of God, and that he sinned and thereby incurred spiritual death.

"(7) I believe in the vicarious death of the Lord Jesus Christ for our sins, in the resurrection of His body, His ascent into Heaven, and His personal and visible future return to the earth, and that salvation is secured only through personal faith in Him."

Upon the filing of the executor's account, the matter came before Bolger, J. By his adjudication, dated January 21, 1957, the fund was awarded to the Board of Christian Education of the Presbyterian Church of the United States of America (now the Board of Christian Education of the United States of America) in trust, "for the uses and purposes set forth in the will as interpreted by stipulation of counsel and this adjudication." The stipulation referred to by Judge Bolger provided, in part, as follows:

"2. Since paragraph (d) of item Ten of the Will dated January 1, 1951 directs that every student who desires aid from the estate shall first sign the Declaration of Faith set forth in paragraph (d), and since paragraph (a) of Item Ten makes a gift of income to further Christian Education in St. Paul Church 50th and Baltimore Avenue under the supervision of the Session of St. Paul Presbyterian Church, whereas paragraphs (b) and (c) of item

Ten provide for the granting of aid to certain boys and girls who desire to study for the ministry of the Gospel, the Declaration of Faith requirement of paragraph (d) applies to aid granted pursuant to paragraphs (b) and (c), but does not apply to the use of income under paragraph (a) of item Ten."

Thereafter, on November 14, 1968, the Board of Christian Education adopted the following recommendation:

"A recommendation that the Board of Christian Education inform the trustees of the A. A. Garrett Memorial Fund that it declines any longer to accept funds from this trust; and that it inform the Philadelphia Orphans' Court that it declines any longer to employ income from the C. A. and D. M. Garbrick Fund for student financial aid, in both cases because of the requirement of the signing of a Statement of Faith by the student recipients of the funds. The Board believes it is unsound from the standpoint of reformed theology to require any doctrinal statement, regardless of the voluntary aspect of the acceptance of the statement, beyond that included in assent to the constitutional questions."

Accordingly, when the board filed its first account the following year it stated that it must decline to use income from the trust for student financial aid in accordance with subparagraphs (b) and (c) of the trust provisions. The auditing judge in 1969 consequently accepted counsel's position that subparagraphs (a), (b) and (c) were optional alternatives available to the trustee, thereby allowing the trustee to pay all net income to St. Paul Church to further Christian Education under the terms of subparagraph (a). Because of the dissolution of the church on December 31, 1972, thereby making dis-

tributions within the purview of any of the trust provisions impossible, a second account was filed by the board which requested the court to determine the uses to which the future income of the trust should be applied. In considering the question thus put to him by the trustee, the auditing judge noted in his subsequent adjudication:

"Clearly, this is a question of *cy pres* to be decided by the Auditing Judge. Under the statutory law of Pennsylvania, where no substitute nor alternative plan of the settlor is available, the court may 'on the application of any interested person . . . order an administration or distribution of the estate for a charitable purpose in a manner as nearly as possible to fulfill the intention of the (settlor), whether his charitable intent be general or specific:' Probate, Estates and Fiduciaries Code, §6110:" Act of June 30, 1972 (no. 164), 20 Pa. S. §6110.

There is no question that the auditing judge was correct in this determination. Exceptant's argument, both before the auditing judge and this court, that the interest of St. Paul Church in the trust vested in the trustees of the Presbytery of Philadelphia upon the church's dissolution is totally without merit. Such would be the case if *property* of the Church was in question. See Craig Estate, 356 Pa. 564 (1947), and Tabor Presbyterian Church Dissolution Case, 347 Pa. 263 (1943). However, as was well stated by the auditing judge:

"We are not here dealing with property of St. Paul Church but with property which was placed in trust; property, the title to which is now in the Board of Christian Education of the United Presbyterian Church of the United States of America. That Board is the present accountant and holds title

as trustee to carry out the terms of the Garbrick Will."

Thus, there is no question that the doctrine of cy-pres was properly applied in the instant case. By its application the auditing judge fulfilled his sacred responsibility to follow as closely as possible the intentions of the testators in this case.

The exceptants, of course, have argued that even if the doctrine was properly applied the result which followed was improper. They suggest that the trust income should be used for the furtherance of Christian Education in the *vicinity* of St. Paul Church. They base this position upon the argument that such use would be for the identical purposes set forth in the will, which intent, they believe, can be totally construed therefrom. In appraising this view, we must give full consideration to the unique history of the application of these trust funds. Over the years compromise and expediency in adminis-tration have combined to lessen the effect of the testators' bequest. The situation has now reached the point where none of the stated purposes of the trust can be given literal effect. Accordingly, the court found it necessary—and properly so—to re-view the charitable intent manifested by the origi-nal bequest and the circumstances surrounding it.

Exceptants have objected to the auditing judge having heard and considered testimony beyond the four corners of the instrument dealing with the tes-tators' intent. They have argued:

"The number of cases in Pennsylvania involving a testator's intention are so numerous that it is not necessary or feasible to recite them at the present time. The legal doctrine is well established in Pennsylvania that if the intent of the testator or

testatrix can be ascertained from the four corners of the will, there should not be any reason or necessity to look elsewhere. It is submitted that the intention of the testatrix, not only was apparent from paragraph Ten (a) of the will, i.e., 'to further Christian Education in St. Paul Church 50th and Baltimore Ave.,' Philadelphia, but that the Stated Clerk of the successors in interest to the dissolved St. Paul United Presbyterian Church specifically testified that the Presbytery of Philadelphia was ready, willing and able to continue the work under this item of the will in accordance with the testatrix's direction. It is respectfully submitted that when the intention of the testatrix is ascertainable from the will, it is not necessary to inquire of any other individual as to what he or she thought was the testatrix's intention." (Exceptant's brief, pages 11-12.)

The auditing judge acted properly in rejecting this argument. The law is clear that in applying the doctrine of cy-pres it is appropriate for the auditing judge to accept parol or extrinsic evidence. See Shand's Estate, 275 Pa. 77; Siemens Estate, 346 Pa. 610. We cannot say that the will in this case was so clear that parol evidence should not have been admitted to assist the court in determining the general charitable intentions of the testators.

It remains then to consider whether the auditing judge, on the basis of the testimony before him, abused his discretion in making the award he did. This question can best be answered by setting forth the findings of fact made by Judge Shoyer, which we find are amply supported by the record. These findings of fact are as follows:

"1. The dissolution of St. Paul Presbyterian Church makes it impossible to distribute the in-

come of paragraph 10 pursuant to the provisions of paragraph 10 (a);

"2. The resolution of the Board of Christian Education of the United Presbyterian Church of the United States of America of November 14, 1968, makes it impossible to expend the income of the trust pursuant to the provisions of paragraph 10 (b) or 10 (c);

"3. The primary testamentary intention of the Garbricks was to educate conservative ministers and this gift to St. Paul Presbyterian Church was incidental;

"4. The plan of the special congregational meeting held in the Sanctuary of St. Paul Presbyterian Church on October 1, 1972, which adopted the plan of the Session, most closely resembles the testamentary plan stated in paragraph 10 of the Garbrick will;

"5. The *cy pres* proposal of the Session of St. Paul Presbyterian Church will best carry forward the testamentary purpose and intent of Mr. and Mrs. Garbrick as expressed in paragraph 10 of their will of December 18, 1951;

"6. The proposed beneficiary, Princeton Theological Seminary, has already appointed a committee to implement its pledge of selecting an annual recipient of the Garbrick Scholarship, specifying that the purpose is for conservative Biblical research with emphasis on prophecy. It is expected that the income will be used each year for a doctoral student whose theological position is conservative specifically and will give emphasis to the area of Biblical prophecy as a matter of research in connection with his doctoral works;

"7. In making its selection among qualified applicants each year, Princeton Theological Semi-

nary can and will give preference to those students coming from the Philadelphia Presbytery."

In view of the foregoing, we find no abuse of discretion. We further find that Princeton's plan honors and gives effect to the Garbricks' true charitable intentions. In arriving at this conclusion, we give particular sway to the requirement in subparagraph (d) of the bequest requiring that every student who desires aid should state his belief in the declaration of faith set forth therein. By this inclusion, the Garbricks clearly showed their desire to support and propagate conservative religious teaching and suggested a charitable intent beyond the mere giving of aid in a specified geographic area. The intention of the testators expressed in subparagraph (d) cannot be ignored nor "stipulated away" by the parties. Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.